Hillsborough,
No. 5539.

Ernest H. Griswold

*v.*

Heat Incorporated *& a.*

Argued January 4, 1967.
Decided April 28, 1967.

*McLane, Carleton, Graf, Greene & Brown* and *James R. Muirhead* (*Mr. Stanley M. Brown* orally), for the plaintiff.

*Sullivan, Gregg & Horton,* (*Mr. James L. Sullivan* orally), for the defendants.

LAMPRON, J. When Heat was incorporated in New Hampshire in 1956 its stockholders and directors were Kretschmar, Harris and the defendant Illig, each holding 500 shares. Its business, the distribution of heating equipment and boilers, was based in Nashua and operated by Kretschmar, as Harris and Illig had businesses of their own, the former in Portland Maine, the latter in Fitchburg, Massachusetts.

Plaintiff Griswold, a certified public accountant, was associated with Heat from its beginning. He installed its accounting system, kept the stock book records, the records of meetings of the directors and the stockholders, counseled and advised on bookkeeping and accounting procedures, and on the financial operation of the company. The Trial Court found that Griswold is a seventy-eight-year-old man with a life expectancy in excess of the remainder of the contract in dispute, who is somewhat deaf, has sciatica, but is alert, moves briskly and he presently is still active in his profession as a certified accountant as a member of a large Portland firm of accountants.

When Kretschmar died in May 1957, the corporation bought his 500 shares of stock. The remaining stockholders, Harris and Illig, because of their own full time interests, agreed to continue Heat only if a manager could be obtained and if Griswold agreed to continue to serve the corporation as he had in the past. This was arranged and thereafter Griswold, who became the holder

of one share of stock, served as director, assistant treasurer, clerk, and continued as financial advisor to the corporation. For these services Griswold received $300 per month, which was reduced to $100 per month in 1960, when Heat had financial reverses, and continued at that rate until January 1, 1964.

Prior to December 2, 1963, Harris notified Illig that he was interested in disposing of his stock in Heat to him. On that date Harris transferred his shares to Illig who became owner of 998 of the 1000 shares outstanding, Mrs. Illig owning one share and Griswold the other. Illig testified that in connection with this purchase he was desirous that Griswold continue to serve Heat in the same manner as he had in the past and that Griswold agreed to do so for $200 per month which Illig agreed to pay. Both Harris and Griswold, who with Illig then constituted the board of directors of Heat, testified that was the agreement between Illig and Griswold.

Although Illig admitted that the above was an agreement he sought and obtained, he denied that the agreement was in writing, stating that it rested on his "verbal agreement." However the Trial Court properly found as a fact that the contract on which plaintiff relies appears in the corporate records of the December 2, 1963 special meeting of Heat's board of directors.

The corporate minutes relating thereto read as follows:

"*Voted*: That Heat Incorporated, a New Hampshire corporation or its successor or successors, if any, by this vote of the directors of the corporation here assembled, does contract to pay monthly to Ernest H. Griswold not less than two hundred dollars beginning January 1, 1964 for such services as he, in his sole discretion may render, the term of the contract to be not less than five years from January 1, 1964 unless terminated earlier by the death of Ernest H. Griswold. A copy of this vote attested by a majority or all of the directors of this corporation shall constitute the written contract to be delivered forthwith to the said Ernest H. Griswold."

The Trial Court properly found that copies of the above vote were signed on that day by all the three directors of Heat, including defendant Illig, and constituted a written contract, copies of which were retained by the plaintiff.

The Court further found as follows: "The plaintiff during the year 1964 performed approximately the same services as he had

previously performed and was paid by the corporation for the entire twelve months of 1964. On December 8, 1964 the defendant, Ernest E. Illig, notified the plaintiff, who was then in Florida, of his intention to have the corporation terminate any further payments to the plaintiff as of January 1, 1965, and further stating that in the event of any other employment of the plaintiff by the corporation it would be on a fee basis. There was a substantial acrimonious exchange of letters and telegrams between the plaintiff and the defendant during this period, and the defendant called a Special Meeting of the Directors on December 29, 1964 at his home, at which two of the then three Directors (the Director replacing Harris being Mrs. Illig), terminated the employment of the plaintiff by vote, and the plaintiff has not been asked to do any duties since then, nor has he received any compensation since then. "

The Trial Court in transferring without ruling plaintiff's right to recover on the contract found "specifically that the only question in which the Court has not found for the plaintiff on the contract is whether or not the language 'for such services as he' (the plaintiff) 'in his sole discretion may render' renders this contract voidable. "

If plaintiff is entitled to recover on this contract, the Trial Court found "that at the present time there would be due on the contract $2,200, and that . . . he is entitled to $2,200, plus the value as of the present date of the right to receive $200 per month for 37 months more forthwith, plus interest on the $2,200 to date. "

Defendants take the position that Griswold's promise by its terms gives the plaintiff such an option in regard to the performance required of him as to render his promise illusory and insufficient to constitute consideration for a bilateral contract between the parties. See *Towle* v. *Wood*, 60 N. H. 434, 436.

Their contention is based on a well established legal principle. 1 Williston, Contracts, *s.* 105A, *pp.* 424, 425 (3d *ed.* Jaeger). However, it is equally well recognized that, if the exercise of the option by its holder involves a detriment to him or a benefit to the promisee, his promise constitutes sufficient consideration for the promise of the other party and a binding contract results between them. *Flannagan* v. *Kilcome*, 58 N. H. 443; *H. P. Hood & Sons* v. *Heins*, 124 Vt. 331, 337; 1 Williston, Contracts, *s.* 104, *p.* 399 (3d *ed.*, Jaeger). Therefore the issue with which we

are concerned stated succinctly, is the following: Does Griswold's promise or obligation "for such services as he, in his sole discretion, may render" constitute sufficient consideration for Heat's promise to pay him $200 per month for 5 years in accordance with the terms of their agreement.

It has long been the rule in this state that "the proper interpretation of a contract is that which will make it speak the intention of the parties at the time it was made." *Salmon Falls Company* v. *Portsmouth Company*, 46 N. H. 249, 255; *McDonald* v. *Company*, 91 N. H. 411, 412. It follows that in construing the written agreement of these parties, all of its provisions, its subject matter, the situation of the parties at the time, and the object intended to be effected will be considered in arriving at the sense of the words they used. 4 Williston, Contracts, *s.* 629, *pp.* 916-918 (3d *ed.*, Jaeger). This is especially true, where as in this case, there is a dispute between the parties as to what was intended by the particular words used in describing Griswold's promise. *Lefebvre* v. *Waldstein*, 101 N. H. 451, 456; *Rivier College* v. *St. Paul Fire Ins. Co.*, 104 N. H. 398, 402.

There was evidence that the nature of the services rendered by Griswold to Heat from its origin in 1956 to December 2, 1963, the date of the agreement, were well known to both Griswold and Illig. The latter testified that on the above date when he purchased Harris' interest he wanted Griswold to continue to serve the corporation as "he had over the years." He asked Griswold if he was willing to continue in "this fashion" at $200 a month and Griswold said he would. The latter testified that Illig agreed to pay him $200 per month for his "usual services" the nature of which was known to Illig. This insight of the object intended to be effected by the agreement is an important factor in determining the sense of the words used therein by these parties. *Brampton Woolen Co.* v. *Local Union*, 95 N. H. 255, 257.

The course of conduct of the parties for the first year following their agreement is further evidence "of their common understanding of the meaning of their contract and the result they expected to accomplish thereby." *Bogosian* v. *Fine*, 99 N. H. 340, 342. The Trial Court properly found that "the plaintiff during the year 1964 performed approximately the same services as he had previously performed and was paid by the corporation for the

entire twelve months." Griswold was paid $200 per month as provided for by the agreement. During that period Illig owned all of the shares of Heat except two, one owned by his wife, the other by Griswold. The three of them constituted the board of directors.

Since this agreement was made by business men, it is reasonable to assume that it was made for business reasons and was intended to have business efficacy. *Wood* v. *Duff-Gordon,* 222 N. Y. 88. It should be so construed. *McDonald* v. *Company*, 91 N. H. 411, 412. In all such business undertakings an obligation of good faith is implied. *Goltra* v. *Weeks*, 271 U. S. 536, 548; *H. P. Hood & Sons* v. *Heins,* 124 Vt. 331, 338. See *Ferguson Co.* v. *Keene*, 89 N. H. 410, 414. An interpretation which makes the agreement fair and reasonable will be preferred to one which leads to harsh and unreasonable results. 4 Williston, Contracts, *s.* 620, *p.* 749 (3d *ed.* Jaeger). Similarly "an interpretation that would place one party at the mercy of another should, if at all possible, be avoided." *Pettibone Wood Manufacturing Co.* v. *Pioneer Constr. Co.,* 203 Va. 152, 157. See *Baltimore* v. *Industrial Electronics, Inc.,* 230 Md. 224, 229.

Construing the language of the agreement in the light of all the criteria previously mentioned, we hold that the provision "for such services as he [Griswold], in his sole discretion, may render" obligated Griswold to render some services to Heat and imposed on him the duty to exercise good faith in the determination of their amount. *Fullington* v. *Ozark Poultry Supply Co.,* 327 Mo. 1167; *H. P. Hood & Sons* v. *Heins, supra.* See *Ferguson Co.* v. *Keene, supra.* We further hold that these obligations constituted detriment to Griswold and benefit to Heat and were sufficient consideration for Heat's promises in the agreement.

Our answer to the transferred question is "Yes" the plaintiff is entitled to recover on the contract.

The Trial Court granted defendant Illig's motion to dismiss the second count in plaintiff's action seeking damages for Illig's interference with Griswold's contract with Heat.

The general principle of tort law governing this issue is the following: "One who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . perform a contract with another . . . is liable to the other for the harm caused thereby." Restatement, Torts, *s.* 766; *Russell* v. *Croteau,*

98 N. H. 68, 69. The fact that the plaintiff has a cause of action against the other party to the contract is not a defense to such an action. *Hornstein* v. *Podwitz*, 254 N. Y. 443. There was evidence that a contract existed between Griswold and Heat; that Illig knew of such an agreement; that he intentionally induced Heat to terminate it; that plaintiff was damaged as a result. This established a prima facie case for the plaintiff. *Wilkinson* v. *Powe*, 300 Mich. 275, 282; Prosser, Torts, *s.* 123, *p.* 967 (3d *ed.* 1964).

However defendant's interference may be privileged defeating the action. Although the nature of this privilege has been expressed in a variety of language the question is essentially the following. Upon a consideration of the relative significance of all the factors involved, should the defendant's conduct be permitted despite its expected harm to the plaintiff. Prosser, Torts, *s.* 123, *p.* 967 (3d *ed.* 1964); 1 Harper and James, The Law of Torts, *s.* 6.12, *p.* 514. Privilege is an affirmative defense. The defendant has the burden of proving his privilege to interfere with the contract and can do so under the general issue. *Mitchell* v. *Aldrich*, 122 Vt. 19, 24. See James, Civil Procedure, *s.* 4.7, *pp.* 141-143 (1965); 86 C.J.S., Torts, *s.* 55, *p.* 978.

Officers, directors or stockholders who have an interest in the activities of a corporation or the duty to advise or direct such activities are held immune from liability in an action for inducing the corporation to breach its contract if the predominant purpose underlying their action is the pursuit in good faith of the best interest of the corporation. *Wilson* v. *McClenny*, 262 N. C. 121; *Petit* v. *Cuneo*, 290 Ill. App. 16; 43 Cornell L. J. 55, 65; Prosser, Torts, *s.* 123, *pp.* 967-968, (3d *ed.* 1964). The Trial Court properly ruled that Illig came within that category of persons.

Whether Illig's conduct was privileged in this case was a question of fact to be determined by a weighing of the factors involved. *Mitchell* v. *Aldrich, supra; Collins* v. *Vickter Manor*, 47 Cal. 2d 875, 883. The Trial Court was warranted in ruling and finding as follows: "[T]hat Illig as the principal officer of the corporation and principal stockholder had a right to terminate the employment of the plaintiff if in his opinion it was a reasonable thing to do, and that individually he is not responsible beyond that . . . It appears to the Court that the defendant Illig thought after a few months that the corporation had made a bad

agreement . . . and that Illig's only purpose was to attempt to get out of any further employment of the plaintiff if it was possible for the corporation to do so. " In granting defendant Illig's motion to dismiss the Trial Court impliedly found that he had sustained his burden of proving his privilege to intervene. We cannot say as a matter of law that this was unreasonable. Plaintiff's exception to the granting of this motion is overruled.

*Remanded.*

All concurred.