Rockingham
No. 82-007

PAUL M. MONTRONE

v.

HENRY S. MAXFIELD & a.

August 6, 1982

*Holland, Donovan, Beckett & Welch*, of Exeter (*William H. M. Beckett* on the brief, and *Stephen G. Hermans* orally), for the plaintiff.

*Orr & Reno P.A.*, of Concord (*William L. Chapman* on the brief and orally), for the defendants.

KING, C.J.  The plaintiff, Paul M. Montrone, appeals from the Trial Court's (*Dalianis*, J.) decision to grant a summary judgment motion filed by the defendants, Henry S. Maxfield and Henry S. Maxfield Real Estate, Inc. We affirm.

In March 1980, Lewis T. Breuninger (the seller) listed his real property in Wolfeboro, New Hampshire, for sale with three real estate brokers including the defendant, Henry S. Maxfield of Henry S. Maxfield Real Estate, Inc. The asking price was $250,000. Shortly thereafter, one of the real estate brokers, Allen Freeman, showed the property and other properties to the plaintiff, Paul M. Montrone. The defendant Maxfield showed the plaintiff other properties, and the plaintiff informed him that he had seen the listed property. Subsequently, the plaintiff began to negotiate with Freeman for the purchase of that property. The plaintiff's offer of $225,000 was communicated to Breuninger by Freeman; and after Breuninger asked the other brokers, including the defendant, whether they had any better offers, he agreed to begin the process of drawing up a purchase-and-sale agreement for sale to the plaintiff. After Freeman showed the purchase-and-sale agreement to Breuninger, he instructed Freeman to show it to Breuninger's attorney. Freeman was then to have the plaintiff sign the agreement and return it to the seller with a deposit.

As Freeman was on his way to see the plaintiff, the defendant Maxfield contacted the seller to inform him that some people to whom he had been showing the property were interested in purchasing it. Breuninger told the defendant about his dealings with Freeman. After the defendant Maxfield spoke with his clients again, however, he called the seller and offered $250,000 on behalf of his clients. Breuninger accepted the offer and then contacted Freeman to tell him that he had accepted another offer.

Subsequently, the plaintiff commenced an action against the defendants alleging that they had tortiously interfered with the plaintiff's agreement to contract for the purchase of the listed property or, alternatively, that the defendants had tortiously interfered with the plaintiff's contractual relationship with the seller. After approximately nine months of discovery, the defendants filed a motion for summary judgment and an affidavit of Henry S.

Maxfield in support of their motion. The plaintiff objected to the defendants' motion and filed affidavits and depositions in support of his objection. The trial court granted the defendants' motion, and the plaintiff appeals.

Summary judgment should be granted only if the pleadings and materials submitted present no genuine issues of material fact. RSA 491:8-a III (Supp. 1981); *Studwell v. Travelers Ins. Co.*, 121 N.H. 1090, 1091–92, 438 A.2d 942, 943 (1981); *Lourie v. Keene State College*, 121 N.H. 233, 235, 428 A.2d 902, 903 (1981).

To prove either tortious interference with a prospective agreement or tortious interference with a contractual relationship, the plaintiff must prove the following: that the plaintiff had a contractual relationship with the seller; that the defendants knew of the contractual relationship between seller and the plaintiff; and that the defendants wrongfully induced Breuninger to breach his agreement with the plaintiff. *See* RESTATEMENT (SECOND) OF TORTS § 766, at 7 (1979); 3 J. DOOLEY, MODERN TORT LAW § 44.03, at 216 (1977); *see also Hangar One, Inc. v. Davis Assoc's, Inc.*, 121 N.H. 586, 589, 431 A.2d 792, 794 (1981); *Tamposi Associates v. Star Mkt. Co.*, 119 N.H. 630, 633, 406 A.2d 132, 135 (1979).

Having reviewed the affidavits and depositions, we conclude that the plaintiff had presented some evidence that a contractual relationship existed between him and the seller. Additionally, he had produced sufficient information regarding the defendants' knowledge of that relationship to create genuine issues of fact on these two issues. We cannot find sufficient allegations, however, to create a genuine issue of fact as to whether the defendants wrongfully induced the seller to breach any agreement he may have had with the plaintiff.

The defendants had an obligation to the seller to communicate any offers for the purchase of the property. *Cf. Griswold v. Heat Corporation*, 108 N.H. 119, 125, 229 A.2d 183, 187–88 (1967); 3 J. DOOLEY, MODERN TORT LAW § 44.09, at 219 (1977). Additionally, any truthful information or honest advice given by the defendants after being requested by seller cannot constitute wrongful interference. *See* RESTATEMENT (SECOND) OF TORTS § 772, at 50 (1979). The plaintiff argues that the defendant Maxfield was not truthful because he told Breuninger that he had a firm offer of $250,000 before he actually had the firm offer. This alleged misinformation, however, was not sufficient to show that the defendant Maxfield participated in any breach of any agreement the seller might have had with the plaintiff. *See Hangar One, Inc. v. Davis Associates, Inc.*, 121 N.H. at 589, 431 A.2d at 794. Rather,

Breuninger cancelled his deal with the plaintiff because he was actually offered $250,000, his full asking price.

While the actions of the defendants may not have been commendable, the defendants were acting within the law by communicating an offer to Breuninger. For that reason, we affirm the trial court's decision to grant summary judgment to the defendants.

*Affirmed.*

All concurred.