**RIBLET TRAMWAY CO., INC.;**
**Tony R. Sowder**

v.

**ERICKSEN ASSOCIATES, INC.;**
**Nils Ericksen.**

**Civ. No. 86-466-D.**

United States District Court,
D. New Hampshire.

July 2, 1987.

---

Charles G. Douglas III, Concord, N.H., for plaintiff.

Thomas J. Donovan, Manchester, N.H., Bruce E. Mohl, Deputy Atty. Gen., Concord, N.H., for defendant.

**ORDER**

DEVINE, Chief Judge.

In this action, plaintiffs Riblet Tramway Co., Inc. ("Riblet") and Tony Sowder, P.E., bring suit against defendants Ericksen Associates, Inc., and Nils Ericksen, P.E., seeking damages for defendants' alleged tortious interference with a prospective agreement (Count I) and for slander (Count II) arising from Nils Ericksen's testimony before the Governor and Executive Council on September 18, 1985. This action was originally brought in Merrimack County Superior Court and was properly removed to this court pursuant to 28 U.S.C. § 1441(a). Jurisdiction is based upon 28 U.S.C. § 1332, the parties being diverse[1] and the amount in controversy exceeding $10,000 exclusive of interest and costs. This matter is presently before the Court on defendants' motion for summary judgment and plaintiffs' objection thereto.[2] The State of New Hampshire Office of the Attorney General has filed an amicus curiae brief on the issue of absolute privilege at Governor and Council hearings.

Rule 56(c), Fed.R.Civ.P., provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of demonstrating that there is no genuine, material fact in dispute. *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 991 (1st Cir.1983). In reaching this determination, the record must be viewed in the light most favorable to the nonmoving party, and all inferences favorable to such party must be indulged. *Finn v. Consolidated Rail*

---

1. Plaintiff Riblet is a Washington corporation with its principal place of business in Spokane, Washington; plaintiff Tony R. Sowder is a citizen of Spokane, Washington. Defendant Ericksen Associates, Inc., is a Vermont corporation with its principal place of business in Ludlow, Vermont, and defendant Nils Ericksen is a citizen and resident of Ludlow, Vermont.

2. Defendants have also filed a motion to strike portions of plaintiffs' Affidavit of Tony Sowder, and plaintiffs have objected thereto. As the Court herein grants defendants' motion for summary judgment, it does not address this motion to strike.

*Corp.*, 782 F.2d 13, 15 (1st Cir.1986); *General Office Products v. A.M. Capen's Sons, Inc.*, 780 F.2d 1077, 1078 (1st Cir. 1986); *Catalfo v. Jensen*, 628 F.Supp. 1453, 1454 (D.N.H.1986).

While the nonmoving party is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsy. *Emery v. Merrimack Valley Wood Products, Inc., supra*, 701 F.2d at 990. Rather, the opposing party must show " 'sufficient evidence supporting the claimed factual dispute ... to require a jury or a judge to resolve the parties' differing versions of the truth at trial.' " *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (quoting *First Nat'l Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

The record before the Court reveals the following undisputed facts. Defendants were employed by the State of New Hampshire Department of Public Works and Highways ("NHDPWH") as engineering consultants for the renovation and repair of certain ski lifts at Mount Sunapee State Park by contract of December 13, 1984. Part of the duties attendant to the contract involved reviewing bids for compliance with the specifications. At the opening of the second bidding, Riblet was the low bidder. However, the Commissioner of NHDPWH, John Chandler, recommended that the Riblet bid be rejected. Consequently, a public hearing before Governor and Council was held pursuant to RSA 228:4–a regarding Commissioner Chan-

dler's recommendation. The center of this controversy arises from the following exchange between Mr. Erickson (E) and the Executive Councilor (EC):

> EC: Are you saying that there is a risk to the public safety if the State of New Hampshire was to go with Riblet? Is that right?
>
> E: That's correct.
>
> EC: You're making that statement.
>
> E: Yes, I am.

Defendant's Exhibit E, Transcript of Hearing before Governor and Executive Council pursuant to RSA 228:4–a, September 1985 [hereinafter "Tr."] at 9.

At the conclusion of the hearing, the Governor and Council, by a four-to-one vote, voted to accept Riblet's bid. The Governor thereafter required Riblet to provide indemnification for the State. Riblet asserts that the additional cost to provide this indemnification was $22,500. Plaintiffs allege that through the above-quoted exchange the defendants slandered the plaintiffs and tortiously interfered with a prospective agreement.

Defendants have moved for summary judgment on both counts. They assert three grounds. First, defendants seek an extension of absolute privilege to statements made before Governor and Council.[3] Second, defendants argue that the statement or response made by Nils Ericksen was conditionally privileged and not slanderous and that the defendants were conditionally privileged to interfere with plaintiffs' prospective agreement. Finally, defendants assert that the opinion given by Mr. Erickson was based on fully disclosed

---

**3.** While it is unnecessary to decide the motion upon this ground, the Court notes that New Hampshire courts traditionally examine the similarity of the hearing to a judicial proceeding in assessing whether an absolute privilege should apply. *Pickering v. Frink*, 123 N.H. 326, 461 A.2d 117 (1983). In conducting this analysis, the courts consider whether the many elements of a judicial proceeding which afford safeguards to the participants are present and whether the nature of public and private interests at stake are vital. *Id.* at 329, 461 A.2d 117; *Supry v. Bolduc*, 112 N.H. 274, 276, 293 A.2d 767 (1972); *Sweet v. Middlesex Mut. Ins. Co.*, 397 F.Supp. 1101, 1104 (D.N.H.1975); *In re Grievance Procedures*, 115 N.H. 310, 312, 341 A.2d 272 (1975).

Applying the standard evolved from these cases to the Governor and Council hearing pursuant to RSA 228:4–a, the Court notes that this is a public hearing at which unsworn testimony is given. The risk of a perjury conviction therefore is not present, nor are witnesses and documents subpoenaed, although attorney representation is permitted and one can be found in contempt for improper behavior. While Governor and Council do have broad investigatory powers regarding the application of state funds under RSA 9:12, the Court notes that Amicus Curiae's reference to power to summon witnesses and to require production of documents under RSA 4:28 is limited by the heading "Pardons; Commutations; and Reprieves".

nondefamatory facts and thus is not actionable. For the following reasons, the Court finds that defendants are entitled to judgment as a matter of law on Counts I and II.

The Court begins its analysis with Count II, as the existence or nonexistence of defamation affects the analysis regarding tortious interference with a prospective agreement. The relevant aspects of defamation law in New Hampshire are well established.[4] The law of defamation seeks to balance the free flow of ideas and opinions essential to a democracy with the protection of an individual's reputation and sense of dignity. *Ollman v. Evans,* 750 F.2d 970, 974 (D.C.Cir.1984) (en banc), *cert. denied,* 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). Language is defamatory if it tends "to lower the plaintiff 'in the esteem of any substantial and respectable group, even though it may be quite a small minority.' " *Morrissette v. Cowette,* 122 N.H. 731, 733, 449 A.2d 1221 (1982) (quoting *Thomson v. Cash,* 119 N.H. 371, 373, 402 A.2d 651 (1979)). Expressions of opinion are actionable if they reasonably are understood to imply the existence of undisclosed defamatory facts. *Nash v. Keene Pub. Corp.,* 127 N.H. 214, 219, 498 A.2d 348 (1985). Conversely, if the opinion is based upon a fully disclosed factual basis, it is not defamatory. *Pease v. Telegraph Pub. Co., Inc.,* 121 N.H. 62, 63, 426 A.2d 463 (1981). The trial court makes this determination by considering the words in the context of the publication taken as a whole. *Duchesnaye v. Munro Enterprises Inc.,* 125 N.H. 244, 249, 480 A.2d 123 (1984); *Pease v. Telegraph Pub. Co., Inc., supra,* 121 N.H. at 65, 426 A.2d 463. Further, the Court examines all of the circumstances under which the words were published. *Chagnon v. Union Leader Co.,* 103 N.H. 426, 174 A.2d 825 (1961), *cert. denied,* 369 U.S. 830, 82 S.Ct. 846, 7 L.Ed.2d 795 (1962). The First Circuit has recently stated,

> As part of this scrutiny, 'the court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. . Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.'

*Flotech, Inc. v. E.I. Du Pont de Nemours & Co.,* 814 F.2d 775, 777 (1st Cir.1987) (quoting *Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.1980)). While New Hampshire does not appear to use cautionary language as an evaluating factor, it does examine all circumstances and the social context. Thus, in *McCabe v. Rattiner,* 814 F.2d 839, 842 (1st Cir.1987), the court in applying New Hampshire law reiterated this approach by stating, "we will examine the statement itself, the article as a whole, and its social context." When the Court interprets the reasonable meanings of words, it must consider that "an action in libel cannot be maintained on an artificial, unreasonable or tortured construction imposed upon innocent words, nor when only 'supersensitive persons, with morbid imaginations' would consider the words defamatory." *Thomson v. Cash, supra,* 119 N.H. at 373, 402 A.2d 651 (quoting *Lambert v. Providence Journal Co.,* 508 F.2d 656, 659 (1st Cir.), *cert. denied,* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 45 (1975)).

■ Applying these criteria to the defendant's statement, and examining the statement itself, the Court first notes that the alleged defamation was an affirmative response to the question, "Are you saying that there is a risk to the public safety if the State of New Hampshire was to go forward with Riblet? Is that right?" Tr. at 9. The phrase, "risk to the public safety" is the pivotal expression upon which this suit is based. "Risk" is a word that suggests possibility, chance, or an element of uncertainty in an undertaking. It implies that an opinion or assessment of possibilities forms its basis. *Webster's Third New International Dictionary* 1961 (1969), gives one definition of risk as "someone or something that creates or suggests a hazard or adverse chance: a dangerous element or factor—often used

---

4. The Court and both parties agree that New Hampshire law applies to those aspects of this diversity action which are governed by state law.

with qualifiers to indicate the degree or kind of hazard." The word "risk" thus implies that an opinion is being uttered. Moreover, the assessment of the presence of risk was given by the State's expert consultant on ski lift engineering. It has always been the province of the expert to offer an opinion on disputed subjects based upon the expert's specialized knowledge. *See* Rule 702, Fed.R.Evid. Thus, the risk assessment coming from the expert further suggests that it belongs in the opinion category.

The inquiry thus becomes, did the opinion imply undisclosed, defamatory facts? In considering this, the Court looks to the statement's immediate context, here the transcript of the hearing. *McCabe v. Rattiner, supra,* 814 F.2d at 842. The testimony by defendant Nils Ericksen repeatedly shows that his concern lay with experience in installing the integrated system: a particular external grip, a standard wire, and a triple chair lift. The specifications, section 1.2 of the Bidder Requirements, stated:

> Bids will be considered only from firms that have previously designed and built this type of triple chair lift.
>
> Bidders must submit with their proposal a list of at least nine similar lifts that they have furnished (3 each A, B, C).

Defendants' Exhibit D, Lift Specifications, at 4. At the opening of the hearing, Mr. Ericksen summed up his doubts about Riblet's experience:

> E: The whole question boils down to one page in the specifications where we said that manufacturers should propose their standard designs and standard equipment. The main reason for that was we didn't feel it was appropriate for the State of New Hampshire to be a testing ground for any untried equipment, especially in the area of critical parts such as hanger heads, grips and chair parts. (Inaudible.) Proposed a grip with which they didn't have any experience. (Inaudible) in despite of having a good product and being around a long time, Riblet did not have, in our opinion, satisfactory experience with this kind of external clamp, ____, failure of equipment as shown in ____ page of your booklet

> there. (Inaudible.) the external clamp goes on the outside of the wire rope as opposed to the type which they have patented for years which goes inside the wire rope and the specifications were written for external clamps only. We have no problem with their approach, but we have a problem with the fact that they have no experience with this type of clamp.

Tr. at 2. The transcript reveals that the listening participants also understood the crux of the problem to be Riblet's level of experience with the integrated system. Thus, immediately after Mr. Ericksen's allegedly defamatory statement, the Governor replied:

> And its [sic] not because of the design of the clamp or the chair or the design of the rope but its [sic] the system. It's a system integration problem.

Tr. at 9. The next statement by the Governor elucidates this point:

> So if we call the clamp component A and the wire B and the chair C, its [sic] not a question of whether they have experience on A or experience on B or experience on C, there [is] no experience on the combination A, B, C.

Tr. at 10.

Plaintiffs contend that the defendant alleged only the Riblet equipment would pose a safety risk; that defendant Ericksen did so without cautionary statements; that Ericksen was unfamiliar with the proposed grip; and that Ericksen implied that the grip was not the only problem. However, the latter two assertions miss the mark as the issue was not the proposed grip but the extent of Riblet's experience installing it on a triple chair lift. As to the first two allegations concerning the safety of Riblet's equipment, the transcript simply does not support this understanding. Rather, Erickson stated at least twice prior to the questioned exchange that every lift manufacturer has had problems with its grips.

> E: The word safe is relative. Every grip manufacturer in the country has had problems with their grips.

Tr. at 7.

> E: Being specific but in general I do not know of any lift manufacturer who has

not had problems with clamps at some[ ]time during its history.

Tr. at 8. Defendant Nils Ericksen reiterated at a later juncture that the safety of Riblet's product was not in question:

> E: I want to make it very clear. I never said that the product was unsafe _____ somebody else's words. I am sorry if the council perceived that.
>
> EC: _____ So, no matter who was awarded the contract if they followed the specs that were written by you and the Department you feel that there'd be no risk.
>
> E: _____ there's always some risk.

Tr. at 48. Nothing in Mr. Ericksen's testimony, placed in the context of the entire document, supports the contention that he alleged Riblet's equipment to be unsafe, nor does the testimony of the other participants indicate that they presumed Riblet's equipment to be unsafe. Instead, the focus was continually upon Riblet's experience with installing the entire system. Even plaintiffs' counsel, Steven J. McAuliffe (MC), summarized the dispute in accord with the Court's perception:

> MC: Mr. Ericksen has apparently advised the department that in his view the equipment we propose is perfectly all right. The design presumably is perfectly all right. What's not perfectly all right as I read the documents we have been provided, we think that your company is insufficiently experienced in installing the external clamp.

Tr. at 19. Nor have the plaintiffs alleged that their level of experience with the particular integrated system was misrepresented by the defendants. In fact, their own chairman, plaintiff Tony R. Sowder (S), testified to the accuracy of the portrayal when discussing both of Riblet's proposed grips.

> Gov: See you're not answering my question.... I'm asking you a simple question. With this grip A [Schnieder] there is a chair, chair C and the wire is B. Where have you installed A, plus B, plus C.
>
> S: I don't think we have any triple chairs.
>
> Gov: Well, there that's the answer. Now, how about Gierak [the second proposed grip].
>
> S: No.

Tr. at 18. Given that Mr. Ericksen had fully disclosed an accurate factual basis for his opinion, the statement cannot be considered defamatory.

Moreover, an examination of the larger social context in which the statement occurred further supports the finding that Ericksen's statements are not actionable. Mr. Ericksen was hired as an expert consultant; he rendered his risk opinion about the low bidder at a hearing in front of Governor and Council pursuant to RSA 228:4–a. Plaintiffs argue that because the defendant was retained as an expert consultant, Governor and Council, who were inexperienced with ski lifts, would consider his remarks as factual conclusions. However, this is not persuasive. Governor and Council are vested with broad investigatory powers regarding the application of state funds under RSA 9:12 and are experienced and quite capable in taking testimony and weighing an expert's opinion. Further, the language used in the exchanges clearly shows that Governor and Council sought Mr. Ericksen's *opinion.* The word "opinion" is repeatedly used.

> EC: I just wanted to clarify the question that I had earlier _____ where I asked you if the contract were awarded to Riblet what would be the risk to the public safety. I want to clean that up. Whether ... in your *opinion* there is one.

Tr. at 48 (emphasis added).

> G [Executive Councilor Louis Georgeopoulos]: In your *opinion* you have to make that recommendation.

Tr. at 49 (emphasis added).

> Gov: And a provision of the specifications they did not meet. In your *opinion* they....

*Id.* (emphasis added).

> Gov: Is there anything you can point to that _____ in your *opinion* is not _____.

*Id.* (emphasis added).

A full examination of the record shows that defendant Nils Ericksen's statement

was the opinion of an expert consultant based upon fully disclosed, undisputed facts. As such, the Court finds that defendants' motion for summary judgment on Count II must be granted.

The Court also finds that summary judgment should be granted as to Count I. New Hampshire law recognizes an action for tortious interference with a prospective agreement. *Emery v. Merrimack Valley Wood Products, Inc., supra,* 701 F.2d 985 (applying New Hampshire law); *Montrone v. Maxfield,* 122 N.H. 724, 449 A.2d 1216 (1982); *Baker v. Dennis Brown Realty, Inc.,* 121 N.H. 640, 644, 433 A.2d 1271 (1981). In considering such cases, New Hampshire has found it useful to adopt the guidance of Restatement (Second) of Torts §§ 766 and 772 (1979). Thus, the New Hampshire Supreme Court stated:

> To prove either tortious interference with a prospective agreement or tortious interference with a contractual relationship, the plaintiff must prove the following: that the plaintiff had a contractual relationship with the seller; that the defendants knew of the contractual relationship between seller and the plaintiff; and that the defendants wrongfully induced [the third party] to breach his agreement with the plaintiff. *See* Restatement (Second) of Torts § 766, at 7 (1979); 3 J. Dooley, *Modern Tort Law* § 44.03, at 216 (1977); *see also Hangar One, Inc. v. Davis Assoc's, Inc.,* 121 N.H. 586, 589, 431 A.2d 792, 794 (1981); *Tamposi Associates v. Star Mkt. Co.,* 119 N.H. 630, 633, 406 A.2d 132, 135 (1979).

*Montrone, supra,* 122 N.H. at 726.

■ Plaintiffs have alleged sufficient information to show that defendants intentionally interfered with Riblet's prospective agreement with the State of New Hampshire. The issue becomes whether defendant Ericksen's statement at the hearing before Governor and Council was privileged or otherwise justified.

It has long been recognized that a person's interest in being free from interference with a contract may be justifiably invaded by someone who is privileged. *Baker v. Dennis, supra,* 121 N.H. at 644, 433 A.2d 1271; *Hendler v. Cuneo Eastern Press, etc.,* 279 F.2d 181, 184 (2d Cir.1960) (applying New Hampshire law). New Hampshire also recognizes a privilege for a person to interfere with a contract by giving honest advice to a third person. *Griswold v. Heat Corp.* 108 N.H. 119, 126, 229 A.2d 183 (1967). The Restatement (Second) of Torts § 772 outlines this privilege, and other jurisdictions applying this section of the Restatement furnish further insight into this area.

In *Systems Operations v. Scientific Games Dev. Corp.,* 414 F.Supp. 750, 765 (D.N.J.1976) rev'd on other grounds, 555 F.2d 1131 (3d Cir.1977), the court stated that a competitor could respond to a state official's query regarding lottery ticket security regardless of the troubled relationship between the two companies. And in *Kecko Piping Co. v. Town of Monroe,* 172 Conn. 197, 374 A.2d 179 (1977), the court found that an architect was privileged to advise his client, the Town, regarding the suitability of contractors and subcontractors. In *Emery v. Merrimack Valley Wood Products, Inc., supra,* 701 F.2d at 992, a conclusory allegation of malice was not sufficient to defeat the privilege of honest advice.

In the instant case, the applicable section of the Restatement bears directly on this issue. Section 772 "Advice as Proper or Improper Interference" at 50 explicates that one who intentionally interferes with a prospective agreement or contractual relation does not interfere improperly by giving the third person "(a) truthful information, or (b) honest advice within the scope of a request for the advice." Comment c to 772 explains that the rationale underlying this provision is to protect the freedom of communication and enable "the lawyer, the doctor, the clergyman, the banker, the investment, marriage or other counselor, and the efficiency expert" to perform his or her task.

The *only* requirements for its existence are (1) that the advice be requested, (2)

that the advice be given within the scope of the request and (3) that the advice be honest. If these conditions are present, it is immaterial that the actor also profits by the advice or that he dislikes the third person and takes pleasure in the harm caused to him by the advice.

Restatement (Second) of Torts § 772 comment c (1979). Plaintiffs claim that Ericksen's advice was neither truthful nor within the scope of the request for advice as the advice sought was whether a risk existed only with the Riblet equipment; that in answering, Ericksen should have indicated that a risk existed with any manufacturer; and that Ericksen's response implied that the Riblet product was unsafe. But as previously indicated, the central issue was never the safety of Riblet's equipment; rather, it was their level of experience installing the integrated system as evidenced by their not providing nine similar installations requested in the bid specifications. Moreover, Ericksen did indicate a risk existed with every other manufacturer. Furthermore, at several times during the testimony, both before and after the allegedly defamatory statement, Nils Ericksen stated at length that he did not believe Riblet's product was unsafe, but that he was concerned with their prior installation experience.

Comparing the advice given in the instant matter to the Restatement's requirements, the Court notes the following. (1) Defendant's advice was requested both by the terms of his contract with the State, which required that he review bids for compliance with the specifications, and, even more clearly, by the Councilor's question, "Are you saying that there is a risk to the public safety if the State of New Hampshire goes with Riblet? Is that right?" Tr. at 9. (2) The response was within the scope of the request, i.e., "That's correct." Tr. at 9. And Ericksen's remarks were within the scope of the purpose of the hearing, which was held to consider Commissioner Chandler's recommended rejection of the low bidder for not fulfilling the bid specifications. Defendant's Exhibit G at 2. And (3), as to the honesty of the advice, while plaintiffs allege that the defendants were maliciously predisposed,[5] they do not contend that Mr. Ericksen misrepresented their level of experience with the integrated system of external clamp, wire, and triple chair lift. In fact, they admit this is so. Tr. at 18. Nor do they contradict Ericksen's assertion that the grip or clamp is a critical stress area and that a failure in that area could be catastrophic. While plaintiffs disagree heatedly over the assessment of the risk arising from their level of experience with the proposed system, they show no evidence that the defendants' advice was dishonest.

Plaintiffs are entitled to all reasonable inferences, and the record must be viewed in the light most favorable to them; yet to survive the motion, they must still produce sufficient information to create a genuine issue of fact. *Montrone v. Maxfield, supra,* 122 N.H. at 726, 449 A.2d 1216. As they have not done so, defendants' motion for judgment on Count I must therefore be granted.

In summary, for the reasons hereinabove stated, the Court finds that defendants' motion for summary judgment must be and it herewith is granted.

SO ORDERED.

---

**5.** Plaintiffs allege that there had been prior difficult relations between Riblet and Mr. Ericksen and that Mr. Ericksen had an undisclosed business relationship with another company qualified to bid. The other company, however, did not bid on this project.