White v. Ransmeier & Spellman          CV-95-626-JD  10/10/96  P
                    UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Robin K. White

          v.                                    Civil No. 95-626-JD

Ransmeier & Spellman


                              O R D E R


     The plaintiff, Robin White, brought this action seeking

damages related to her termination from her position as a legal

secretary with the defendant law firm, Ransmeier & Spellman.  The

defendant filed a five-count counterclaim against the plaintiff,

seeking damages from the events that precipitated the plaintiff's

termination.  Before the court is the plaintiff's consolidated

motion to dismiss the defendant's counterclaims and motion to

strike certain portions of the defendant's prayer for relief

(document no. 9).



                            Background[1]

     The plaintiff was employed by the defendant as a legal

secretary from August 1989 until her termination on November 1,

1994.  It is not disputed that she performed her job duties

adequately throughout the duration of her employment.

_____

     [1]The facts relevant to the instant motion either are not in
dispute or have been alleged by the defendant.

In March 1994, the plaintiff informed one of the lawyers at the firm that she wanted to leave her job because she had had an affair with Richard Meaney, the firm's legal administrator. The matter was brought to the attention of at least one member of the firm's executive committee, and the situation apparently was diffused when Meaney submitted his resignation on or about June 1, 1994.

However, in the weeks that followed Meaney's resignation, the plaintiff began to feel that other employees of the firm were blaming her for Meaney's departure. The plaintiff harassed one employee who had been friendly with Meaney by making phone calls to the employee's home late at night and then hanging up, by sneaking up behind the employee, and by staring at her without saying anything. The plaintiff also stared threateningly at other female employees, and on one occasion, bumped an employee as she was walking down a flight of stairs.

Meanwhile, in August 1994, Meaney secured a position as a legal administrator with Greeley, Walker & Kowan, a Honolulu, Hawaii law firm. On September 2, 1994, an unidentified female caller, believed to be the plaintiff, placed a telephone call to inform the lawyers at Greeley, Walker that a bomb had been planted at their offices. In the next several weeks, a caller also believed to be the plaintiff made phone calls threatening

employees at Greeley, Walker; placed "hang-up" phone calls to Meaney's wife, who had not yet left for Hawaii; made harassing calls to Meaney in Hawaii; and called Meaney's daughters' schools, informing school administrators that "Dick Meaney is going to have his house burned down with his kids inside it," and that one of Meaney's daughters was about to be murdered because of a grudge against her father. Ransmeier & Spellman was informed of these actions.

The plaintiff's conduct continued into October 1994, during which the plaintiff made death threats to two Ransmeier & Spellman employees and continued to harass and threaten Greeley, Walker and its employees. After consulting with the police, the New Hampshire Attorney General, the Greeley, Walker firm, and an unspecified number of workplace violence experts, the firm decided to terminate the plaintiff.

On December 29, 1995, the plaintiff commenced the instant action against Ransmeier & Spellman, alleging that she had been terminated in violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, N.H. Rev. Stat. Ann. ("RSA") § 354-A, and, in addition, asserting a variety of common-law theories. On March 20, 1996, the defendants filed an answer and five-count counterclaim, seeking, inter alia, damages, enhanced compensatory damages, and attorney's fees, and alleging

3

(1) interference with business relations; (2) prima facie tort; (3) intentional tort to cause harm; (4) breach of the implied covenant of good faith and fair dealing; and (5) breach of the duty of loyalty.

## Discussion

### I. Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the defendant's counterclaim as true, "indulging every reasonable inference helpful to the [defendant's] cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "`only if it clearly appears, according to the facts alleged, that the [defendant] cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

A.   Interference with Contractual Relations

Although the defendant has styled count I of its counterclaim as interference with business relations, its own citations to Demetracopolous v. Wilson, 138 N.H. 371, 640 A.2d 279 (1994), and Jay Edwards, Inc. v. Barker, 130 N.H. 41, 534 A.2d 706 (1987) indicate that the claim is properly brought under the rubric of intentional interference with contractual relations.  To succeed on such a theory, Ransmeier & Spellman must show that the plaintiff improperly and intentionally interfered with an existing contractual relationship between Ransmeier & Spellman and a third party.  See Demetracopolous, 138 N.H. at 373-74, 640 A.2d at 281; Montrone v. Maxfield, 122 N.H. 724, 726, 449 A.2d 1216, 1217 (1982); Restatement (Second) of Torts § 766 (1979).

Ransmeier & Spellman's claims hinge on its assertions that the plaintiff improperly interfered with the firm's relationships with its clients and its employees by engaging in conduct that she knew was substantially certain to cause a loss of billable hours and to hinder the firm's employees from performing their duties.  See Memorandum in Support of Objection to Motion to Dismiss and to Strike ("Defendant's Memorandum") at 9-10.  However, it has failed to allege any facts demonstrating that the plaintiff's conduct caused Ransmeier & Spellman's clients or

5

employees not to perform their contractual obligations to the firm, or that the plaintiff's conduct caused Ransmeier & Spellman not to perform its contractual obligations to third parties.[2]  As such, Ransmeier & Spellman has failed to state a claim for interference with contractual relations.

The motion to dismiss count I of the defendant's counterclaim is granted.


B.  Prima Facie Tort & Intentional Tort to Cause Harm

Counts II and III of the defendant's counterclaim seek relief for conduct that was "outrageous[,] intentional, . . . and caused harm to the firm."  Defendant's Memorandum at 11.  Although some jurisdictions have recognized various versions of

---

[2]The court notes that the New Hampshire Supreme Court has not adopted § 766A of the Restatement (Second) of Torts, which creates a cause of action for a party whose performance of a contract with a third party is made more burdensome by the improper and intentional acts of a defendant, and appears not to have extended the tort of interference with contractual relations to cover such circumstances.  In the absence of guidance from the New Hampshire Supreme Court, the court declines to recognize such a cause of action.  Accord Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994) (declining to recognize cause of action based on § 766A under Pennsylvania law); see also Price v. Sorrell, 784 P.2d 614, 616 (Wyo. 1989) (causing contract to be more costly to perform "too speculative and subject to abuse to provide a meaningful basis for a cause of action").  See generally Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 659-63 (3d Cir. 1993) (distinguishing between inducing third party not to perform contract with plaintiff and hindering plaintiff from performing contract with third party).

"umbrella" liability for intentional torts, see, e.g., Gray v. Bicknell, 86 F.3d 1472, 1481 (8th Cir. 1996) (elements of prima facia tort under Missouri law); Twin Lab., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990) (elements of prima facie tort under New York law); see Restatement (Second) of Torts § 870 (1979), New Hampshire has not recognized such a cause of action.  In light of the New Hampshire Supreme Court's silence on this issue and the potential breadth of the theories the defendant has presented, the court declines to recognize these causes of action.

The plaintiff's motion to dismiss counts II and III of the counterclaim is granted.


C.    Breach of the Implied Covenant of Good Faith
      and Fair Dealing

In count IV of its counterclaim, the defendant alleges that the plaintiff violated the implied covenant of good faith and fair dealing in her at-will employment contract by engaging in behavior that was "inconsistent with common standards of decency, fairness, and reasonableness and with the parties' agreed-upon common purposes and justified expectations."  Defendant's Memorandum at 12 (quoting Centronics Corp. v. Genicom Corp., 132 N.H. 133, 140, 562 A.2d 187, 191 (1989)).  However, the theory upon which the defendant relies does not convert every

7

potentially tortious act between parties to a contract into a breach of the implied covenant. Rather, it only permits recovery "under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value." Id. at 143, 562 A.2d at 193; see, e.g., Griswold v. Heat Corp., 108 N.H. 119, 124, 229 A.2d 183, 187 (1967) (contract under which party was to provide "such services, as he, in his sole discretion, may render" obligated party to provide a level of services consistent with good faith); Howtek v. Relisys, 94-297-JD, slip op. at 6-7 (D.N.H. Feb. 1, 1996) (express agreement between designer and manufacturer to negotiate in good faith for manufacture of additional products requires designer to inform manufacturer of its intention to market new items in related field and to possess genuine willingness to entertain reasonable offers to manufacture such products).

Unlike Griswold or Howtek, the at-will employment contract between the plaintiff and the defendant neither expressly nor impliedly granted the plaintiff the discretion to engage in conduct that could have frustrated the defendant's purpose in contracting. Indeed, the conduct in which the plaintiff is alleged to have engaged was wholly independent of her obligations under her employment contract. Thus, regardless of whether on

8

balance the plaintiff's conduct outweighed her contributions to the firm, her conduct could not have deprived the defendant of the benefit of the bargain of its employment contract with the plaintiff. Although the alleged conduct is, by all accounts, inconsistent with common standards of decency and may give rise to some form of tort or criminal liability, the plaintiff's allegations are insufficient to justify a damage award for breach of the implied covenant of good faith and fair dealing.

The plaintiff's motion to dismiss count IV of the counterclaim is granted.


D. Breach of Loyalty

In count V the defendant seeks relief for the plaintiff's breach of her duty of loyalty. This court has recognized that under New Hampshire law

> an employee holding a position of trust and confidence, such as a supervisor, manager, director, or officer, owes a fiduciary duty of loyalty to her employer. The duty demands that the employee act solely for the bene-fit of the employer, never to the employer's detriment. Detrimental behavior could include misappropriating a business opportunity of the employer, use of confiden-tial information, or soliciting clients of the company for the employee's competing business.

Liberty Mutual Ins. Co. v. Ward, 93-610-L, slip op. at 9 (D.N.H. July 11, 1994). The defendant's claim, which seeks recovery for

acts of an at-will, nonmanagerial employee, falls outside the scope of Ward's conception of a breach of the duty of loyalty, and beyond the scope of any cause of action for breach of the duty of loyalty recognized by the New Hampshire Supreme Court.

The plaintiff's motion to dismiss count V of the counterclaim is granted.

II. Motion to Strike

The plaintiff has moved to strike paragraph C of the defendant's prayer for relief, which seeks an award of "damages, enhanced compensatory damages, and attorney's fees on Ransmeier & Spellman's counterclaims." As the court has already dismissed the counterclaims, the motion to strike paragraph C is moot.

The plaintiff also has moved to strike paragraph E of the defendant's prayer for relief, which asks the court to "order [the plaintiff's] attorney's to pay the legal costs and expenses of this action due to their lack of a thorough investigation before bringing this action." The defendant has withdrawn its request, acknowledging its failure to comply with Fed. R. Civ. P. 11(c)(1)(A). Accordingly, the motion to strike paragraph E is moot.

## Conclusion

The plaintiff's motion to dismiss the defendant's counterclaims (document no. 9) is granted.  The plaintiff's motion to strike portions of the defendant's prayer for relief (document no. 9) is moot.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

October 10, 1996

cc:  Andrea P. Thorn, Esquire
     Robert J. Gilbert, Esquire
     Garry R. Lane, Esquire

11