## CARPENTER *v.* BAILEY.

In an action for libel, it is not a sufficient excuse that the defendant was informed and believed that the fact stated by him was true. It should appear that he had probable cause to believe it.

This is an action on the case for a libel, by J. N. Carpenter against J. H. Bailey, the writ bearing date September 21, 1859. The declaration alleges, that, on April 20, 1869, the plaintiff was a paymaster in the navy, stationed as purchasing agent at Portsmouth ; that, by the rules of the navy department, he was entitled to remain on that station three years ; and that the defendant, contriving, &c., published of him the following libel : " To the Honorable the Senators and Members of the House of Representatives in Congress from New Hampshire : The undersigned, after much patience has been exhausted, beg to remonstrate against the further continuance at this station of Paymaster J. N. Carpenter as purchasing agent. In all our struggles, Paymaster Carpenter has always voted against us, carrying the straight Democratic ticket, throwing his patronage adversely to the friends of General Grant, and always filling the requirements of a tool sent here by ex-Secretary Welles to carry out the interests of Andrew Johnson. May we hope for relief from such a burden ? Let the rebel sympathizer be exchanged for a man who will have office hours of a convenient kind, and will be found there *at least once a day* to attend to those having business there, and officers and citizens will alike be grateful. Portsmouth, N. H., April 20, 1869. E. G. Peirce, Jr., Chas. Robinson, Aaron Young, Daniel J. Vaughan, E. A. Stevens, W. H. Hackett, John H. Bailey, Paine Durkee."

The declaration also contains proper innuendoes to charge the defendant, and allegations of special damage. It may be referred to as part of this case.

To this declaration, the defendant pleads—(1) the general issue; (2) that the libel is true, &c.; (4) that the defendant had good cause to believe the libel to be true, and that, as a citizen of the United States residing in Portsmouth, he exhibited the libel, that the charges might be investigated, and the plaintiff removed if guilty; upon all which pleas the plaintiff takes issue.

The third plea is as follows: *actio non est* "because he says the defendant then and there was and long before had been a loyal citizen of the United States, and interested in the support of the government thereof, and of the administration of General Grant as president of the United States, and that the said plaintiff then and there being and long before having been paymaster in the United States navy, and purchasing agent, stationed at said Portsmouth, had, as the defendant was informed and believed, always voted against the party supporting General Grant as a candidate for the presidency of the United States, and opposing his administration as president after his election to that office; and, after the inauguration of General Grant into said office, the plaintiff, as the defendant was informed and believed, always carried the straight Democratic ticket, and threw the patronage of his office, as such paymaster and purchasing agent, adversely to the friends of General Grant, and, as the defendant was informed and believed, had, in the discharge of his said official duties, during the previous administration of Andrew Johnson as president of the United States, willingly obeyed the behests and requirements of ex-Secretary Welles, in the interest of said administration of said Johnson, and had, during the war of the late rebellion, sympathized with the rebels to the detriment of the government and the loyal people of the United States, and continued to sympathize with those who had lately been in rebellion against the government of the United States; and, after the election and inauguration of General Grant as president of the United States, continued, as the defendant was informed and believed, to advocate and uphold the principles and policy of said Andrew Johnson, and of his administration, and, as the defendant was informed and believed, at the time of the publication of said petition, and long before, had not had convenient office hours for the prosecution of the business of his said office, and could not be found at his office at convenient and proper times for the transaction of the business of his said office; and the defendant believes that the public good, and the welfare of said administration of General Grant, required that the said plaintiff should be removed from said office at said station, and that a suitable officer should be put there in his stead, and that the senators and members of the house of representatives in congress from the state of New Hampshire were the proper persons and officers to be petitioned in order to procure the removal of the said plaintiff from said office at said naval station, the defendant, in good faith, and without malice or ill-will to the

said plaintiff, but in order to procure the removal of the plaintiff for the causes aforesaid from the said office, signed said petition to said senators and representatives containing said supposed libellous words in the plaintiff's declaration mentioned, as he lawfully might have done, for the cause aforesaid, and this he is ready to verify." Wherefore, &c.

To this plea the plaintiff demurred generally, and the defendant joined the demurrer, and the questions arising upon the demurrer were reserved for the consideration of of the full bench.

*Small* and *Frink*, for the defendant.

The questions of law in this case arise upon demurrer to the third plea.

The defendant's exception to it, as appeared from the oral discussion in the court below, was confined to the plaintiff's justification that he acted upon *his information and belief* in signing a petition for the removal of the plaintiff from office.

I. This was a privileged communication. *Thorn* v. *Blanchard*, 5 Johns. 508; *Reid* v. *Delorme*, 2 Bred. 76; *Fairman* v. *Ives*, 2 B. & A. 642; *O'Donaghue* v. *McGeriren*, 23 Hend. 26; *Bodwell* v. *Osgood*, 3 Pick. 379; *Woodward* v. *Leander*, 6 C. & P. 548; 1 American Leading Cases (ed. of 1857) 172, and the cases there cited. The occasion was one which repelled the presumption of malice, and the words were published in the performance of a public duty.

II. The only question therefore is, whether the defendant signed the memorial in good faith and without malice. The burden is upon the plaintiff to show *mala fides*, or that the defendant acted colorably, and, in fact, there was no occasion for the defendant's resorting to any special plea in justification. The issue however is, whether it is enough that a party acts upon his information and belief in the performance of a public duty. The whole gist of the case being one of malice, certainly if his publication was based upon information which he believed, and was made for the honest purpose which his plea sets forth, there could have been no malice. *State* v. *Burnham*, 9 N. H. 34; 1 Hilliard on Torts 116, 342, 361, 130; *Boswell* v. *Osgood*, 2 Pick. 383; *Bradley* v. *Heath*, 12 Pick. 163; *Gassett* v. *Gilbert*, 6 Gray 98; 1 American Leading Cases 162. Whenever the defendant's mind was led to the honest belief of the charges he made, it could not have been actuated by malice. It would have undoubtedly been enough that he had probable cause to believe the representations made in the memorial to have been true, although some slight doubt of their truthfulness remained in his mind; but when he *believed* their truth, his mind had arrived at a stronger degree of conviction than was necessary to excuse him. It seems hardly necessary to add, that the language of the plea is that of many reputed cases. In 1 American Leading Cases (ed. of 1857) 162, these words are used: It may be shown that the speaking or writing was on a lawful occasion, and was

made *under belief of its truth* and without malice. In *Boswell* v. *Osgood*, 3 Pick. 383, the court say,—It must be admitted that if the defendants had proceeded with honest intentions, *believing the accusation to be true*, although, in fact, it was not, he would be entitled to protection. In *Gassett* v. *Gilbert*, 6 Gray 98, this is the language of Judge BIGELOW: "It must be taken for granted that the publication was believed by the party to be true," etc. See, also, *Swan* v. *Tappan*, 5 Cush. 111. There are many other cases in which the same language is used, but it hardly seems necessary to call the attention of the court to them.

*Hatch*, for the plaintiff.

I. The plea does not pretend that the libel was true, but only that the defendant was informed and believed that the charges against the plaintiff were true, and that "the defendant believes [believed] that the public good," etc., required the removal of the plaintiff from office.

II. The charges in the libel are partly (1) actionable in themselves, as that of being "a rebel sympathizer," (2) and partly actionable because they are false and have been followed by special damage. Being false, malice is implied, or, rather, it is proved by the falsity of the charge—3 Greenl. Ev., sec. 168—and the burden of showing justifiable cause is on the defendant. Probable cause, and the belief of the defendant that the charge is true, are not sufficient justification, unless the defendant can show that "he was actuated by good motives." *State* v. *Burnham*, 9 N. H. 45. These the defendant does not sufficiently show in the plea.

III. This libel was in no sense a privileged communication. Such privilege is allowed only where the defendant published the libel : (1) in the proper discharge of the duties of some public office, as was the case in *Bradley* v. *Heath*, 12 Pick. 163 ; or, (2) when the offensive communication is, in good faith, addressed to some official having power to correct the supposed evil, as by a creditor of an army officer to the secretary of war—*Fairman* v. *Ives*, 5 B. & Ald. 642—or in a judicial proceeding ; or, (3) in the discharge of some duty where the defendant's interest was concerned. *Toogood* v. *Spyring*, 1 Cr. M. & R. 193. Now, the plea sets up no privilege except that the defendant was a loyal citizen of the United States, and interested in the government thereof, and of the administration of Gen. Grant. In this there is nothing to distinguish him from any other citizen of the United States, all of whom are presumed to be loyal, interested in the support of the government thereof, and of the administration of the president. No court has yet given any sanction to the claim that loyalty is the property of any class or party, or that one man, or any number of men, have a greater interest in a good government and honest administration, than all other citizens. The consequences of allowing this plea will be, that any citizen of the United States may publish any libel, however gross and hurtful, against a public officer, if he has been " informed and believes " the charges to be true, no matter how meagre his

information or unjustifiable his belief. And it would seem that the same license would' be allowable if the libeller apprehended that his victim was a candidate for office, or might be appointed to office. The defendant does not aver that he had probable cause, only that he was informed and believed the libel to be true. The libel gains no privilege because it is addressed to members of congress. They had no official power or control over the plaintiff, nor could they legitimately use any influence for his removal, more than other men. Nothing, in short, distinguishes this from an ordinary libel, false, and therefore malicious, hurtful to the plaintiff, and therefore actionable, notwithstanding the excuses set forth in this plea.

SARGENT, C. J. The law applicable to this case was very fully considered and stated in an early New Hampshire case, in which the opinion was delivered by PARKER, J., in 1837, and the more recent decisions have not changed the law that we are aware of, so far as the questions involved in this case are concerned. *State.* v. *Burnham,* 9 N. H. 34, was an indictment for libel; but it was held that, so far as the principles of the defence were concerned, there was no substantial difference between a criminal and a civil case.

If the end to be attained by a publication is justifiable—as, if the object is the removal of an incompetent officer, or to prevent the election of an unsuitable person to office, or to give useful information to the community, or to those who have a right and ought to know, in order that they may act upon such information,—the occasion is lawful; and the occasion being one in which matter of such nature may properly be published, the party making the publication may either justify or excuse it.

To constitute a justification, the party must prove the truth of the matter alleged, and the justification must be as broad as the charge. It is no sufficient justification to show that a part of the matter is true.

If the defendant cannot justify by showing the truth of the matter charged, he may excuse the publication by showing that it was made upon a lawful occasion, upon probable cause, and from good motives.

He also adds, on page 43, that in a civil case matter in justification should be pleaded, or notice of it given by a brief statement. But that matter in excuse merely, it is apprehended, is properly given in evidence under the general issue, although it is said that it may be pleaded;—and see authorities.

It is also said that matter in excuse in a prosecution for libel is where the defendant, upon a lawful occasion, proceeded with good motives upon probable grounds,—that is, upon reasons that were apparently good, but upon a supposition which turns out to be unfounded. This is a very different thing from showing the actual truth of the allegations: where that is proved with a proper occasion, it is a justification without regard to motives; but where the statements made prove false, the defendant needs to show not only a proper occasion, but a good motive also,—for, if the matter be untrue and the motive bad, how

could the end be justified or even excused ? But when the occasion is proper, one may be excused for stating what proves to be untrue, if he had probable cause to believe it true, and spoke it from good motives ;— see authorities on page 45.

So, in *Palmer* v. *Concord*, 48 N. H. 217, it is said, by SMITH. J., that most of what are called " privileged communications" are conditionally, not absolutely, privileged. The question is one of good faith, or motive, and can be settled only by a jury. A court cannot rule that a communication is privileged, without assuming the conditions on which it is held to be privileged, namely, that it was made in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds, of its truth ;—and see cases cited.

In the case before us, the occasion would be a lawful one, provided the motive was good, and there was probable cause. And the question is, whether the mere fact, that· the defendant had been informed and believed that a fact was so, is equivalent to having probable cause to believe it to be so. And we think it could not be assumed that it was so. A person might be informed of a fact by one in whom he might, for some special reason, have confidence, but to whom no one else would give the slightest credence ; and a jury would readily find that a belief in that case was founded upon information which would not amount to probable cause for the belief of any man of ordinary capacity. The question for the jury would be, not whether the defendant believed it, but had he probable cause to believe it ? There might be belief without probable cause for it ; and hence it would not be sufficient to allege merely information and belief, because that might not, in a given case, amount to probable cause. The fourth plea is substantially correct in form, and goes as far as the rule thus laid down will warrant ; and we think this third plea is insufficient.

*Demurrer sustained.*