Rockingham
No. 82-238

# Walter H. Pickering, Jr.

v.

# Harold R. Frink & a.

May 9, 1983

*Tybursky & Watson*, of Portsmouth (*Stephen J. Tybursky* and

*Thomas R. Watson* on the brief, and *Mr. Watson* orally), for the plaintiff.

*Shaines, Madrigan & McEachern P.A.*, of Portsmouth, and *Flynn, McGuirk & Blanchard*, of Portsmouth (*Paul McEachern* and *Anthony S. Hartnett* on the brief, and *Mr. McEachern* and *Raymond P. Blanchard* orally), for the defendants.

KING, C.J.   The sole issue presented by this appeal is whether the act of the defendants, thirteen citizens of Newington, in signing a petition charging the plaintiff, Walter H. Pickering, Jr., Newington's fire chief, with misconduct and seeking his removal, was absolutely privileged and therefore required the dismissal of the plaintiff's libel action. We reverse the order of dismissal and remand.

The plaintiff was a member of the Newington Volunteer Fire Department for nearly thirty-eight years. In 1974, he was appointed fire chief by the Newington Board of Fire Engineers, and he served as chief until his retirement in 1981.

In June 1978, the defendants, thirteen citizens of Newington, signed a petition accusing the plaintiff of misconduct and calling for his removal as fire chief. The petition contained eight charges, including personal misconduct, dereliction of duty, and malfeasance. The petition was forwarded to the Newington Board of Selectmen (selectmen), the town's governing body, in September 1978. After much litigation and a hearing before the selectmen, all charges against the plaintiff were dismissed. For a description of the course of that litigation, see *Board of Fire Engineers v. Board of Selectmen*, 120 N.H. 65, 410 A.2d 1128 (1980).

The plaintiff then brought a libel action against the defendants, the thirteen individuals who signed the petition. He claimed that the defendants had attempted to have him removed as fire chief by publishing false and defamatory statements which they knew to be false or had no reasonable grounds to believe to be true. The defendants moved to dismiss the plaintiff's writ, on the ground that the signing of the petition was absolutely privileged because it constituted the initiation of a judicial proceeding. After a hearing, a Master (*Mayland H. Morse, Jr.*, Esq.) recommended that the motion to dismiss be granted, and the Superior Court (*Contas*, J.) approved the master's recommendation. The plaintiff appealed the dismissal of his action.

■■■ New Hampshire law recognizes that certain communications are absolutely privileged and therefore immune from civil suit. Absolute privilege bars an injured party from recovering any damages and does not depend on the defendant's good faith. *McGrana-*

*han v. Dahar*, 119 N.H. 758, 762, 408 A.2d 121, 124 (1979); 50 AM. JUR. 2d *Libel and Slander* § 193, at 696 (1970).

■■ On the other hand, a communication is conditionally or qualifiedly privileged if it was published on a lawful occasion, in good faith, for a justifiable purpose, and with belief, founded on reasonable grounds, of its truth. *Chagnon v. Union-Leader Co.*, 103 N.H. 426, 438, 174 A.2d 825, 833 (1961), *cert. denied*, 369 U.S. 830 (1962); 50 AM. JUR. 2d *Libel and Slander* § 195, at 698 (1970). In the case of conditional or qualified privilege, the question whether the defendant is entitled to claim the privilege is one for the trier of fact. *McGranahan v. Dahar*, 119 N.H. at 762, 408 A.2d at 123.

■ The plaintiff argues that a petition addressed to a local governing body calling for the removal of a public officer is only conditionally or qualifiedly privileged, and that the trial court therefore erred in dismissing the plaintiff's action. We agree that the general rule is that a petition addressed to a local governing body calling for the removal of a public officer is conditionally or qualifiedly privileged. *See Carpenter v. Bailey*, 53 N.H. 590, 594–95 (1873); *see also* 50 AM. JUR. 2d *Libel and Slander* § 219, at 730–31 (1970); 53 C.J.S. *Libel and Slander* § 116, at 193 (1948). We must determine, however, whether the fact that the defendants' petition resulted in a hearing on the charges made it part of a judicial proceeding and thus gave the petition the status of being absolutely privileged. We hold that it did not.

■■ It is well established that statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions, provided they are pertinent to the subject of the proceedings. *McGranahan v. Dahar*, 119 N.H. at 763, 408 A.2d at 124. As we said in *McGranahan*, the policy of granting absolute immunity for such statements "reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings." *Id.*, 408 A.2d at 124.

The plaintiff contends that the hearing before the selectmen to consider the charges contained in the defendants' petition did not constitute a judicial proceeding entitling the petition to absolute immunity. He cites *Supry v. Bolduc*, 112 N.H. 274, 293 A.2d 767 (1972), in which we held that statements made during a public hearing of the Concord Zoning Board of Adjustment on a request for a zoning variance were not absolutely privileged, because many elements of a true judicial proceeding which afford safeguards to the participants were not required, and because the public and private

interests involved did not justify total immunity. *Id.* at 276, 293 A.2d at 769.

We also stated: "The occasion determines the existence and scope of the privilege, if any, . . . and the availability of an absolute privilege must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." *Id.* at 276, 293 A.2d at 769 (citations omitted). We concluded that the defendant in that case was entitled to only a qualified privilege.

■ RSA chapter 43, which prescribed procedures for the board of selectmen's hearing on the defendants' petition, provides no greater procedural requirements than RSA chapter 31 prescribes for zoning board of adjustment hearings. In fact, the procedural requirements are greater under RSA chapter 31 than under RSA chapter 43, including the power of a zoning board to compel the attendance of witnesses. RSA 31:68 (Supp. 1981). If, in light of these procedural requirements, we held that a zoning board of adjustment hearing did not provide sufficient protection to be considered a "judicial" proceeding in *Supry*, we can hardly find that an absolute privilege exists for a hearing before a board of selectmen in which fewer procedural safeguards exist. Even though the public interest here may be greater than in *Supry*, we do not consider it to be sufficiently greater to justify treating the hearing before the board of selectmen as a "judicial" proceeding. Consequently, we reject the defendants' assertion that the board of selectmen's hearing was a judicial proceeding such that the petition which led to the hearing was cloaked with absolute privilege.

Nonetheless, we believe that the defendants' petition was entitled to more than the qualified privilege that generally attaches at common law to a citizen's communication to a public official who is authorized to act in the public interest. *See Carpenter v. Bailey*, 53 N.H. at 594–95; W. PROSSER, HANDBOOK ON THE LAW OF TORTS § 115, at 791–92 (4th ed. 1971). The master in this case based his conclusion that the defendants' petition was absolutely privileged, in part, on the constitutional right to petition for redress. N.H. CONST. pt. I, art. 32. Although we disagree with the master that the right of petition "would become ineffective or meaningless" without an *absolute* privilege, we believe that a petitioner should not be subject to tort liability for exercising his constitutional right to petition by signing a petition that contained a statement which he had no reasonable ground to believe was true. If only a *qualified* privilege were applicable, the petitioner would be liable for such a statement. *Chagnon v. Union-Leader Co.*, 103 N.H. at 438, 174 A.2d at 833.

■■ In our opinion, the desirability of allowing unfettered exercise of the constitutional right to petition for the removal of a public official is a factor that weighs so significantly in the public interest as to require greater protection to the exercise of that right than the common-law qualified or conditional privilege generally provides. We hold that, unless the defendants had knowledge of the falsity of the statements of facts, their petition in this case was privileged, and they are not subject to liability for any defamatory statements contained in the petition.

■ In the past, our qualified-privilege cases have tended to find that there was no privilege, and therefore liability attached, where statements were published on an unlawful occasion, in bad faith, for an unjustifiable purpose, or without a reasonable belief of their truth. *See, e.g., Chagnon v. Union-Leader Co.*, 103 N.H. at 438, 174 A.2d at 833; *Palmer v. Concord*, 48 N.H. 211, 217 (1868). We emphasize that more than the mere absence of good faith or reasonable belief of the truth must have existed in order for the defendants in the instant case to be liable to the plaintiff. Once the defendants demonstrate that they were exercising their constitutional right to petition for the removal of the plaintiff from public office, nothing short of proof by the plaintiff that the defendants actually *knew* the statements contained in the petition were false will suffice to justify holding them liable. *See Baer v. Rosenblatt*, 108 N.H. 368, 371–72, 237 A.2d 130, 133 (1967).

■■ Because the defendants' petition was protected by less than an absolute privilege, we hold that the trial court erred in dismissing the plaintiff's defamation action on the pleadings alone. We cannot determine whether the privilege attaches under the circumstances of this case. Such a factual determination should be made, at the earliest, on a motion for summary judgment after the parties have had the opportunity to support or refute the allegations in the pleadings. *See McCusker v. Valley News*, 121 N.H. 258, 260–61, 428 A.2d 493, 495, *cert. denied*, 454 U.S. 1017 (1981); *Thomson v. Cash*, 119 N.H. 371, 378, 402 A.2d 651, 656 (1979); *Supry v. Bolduc*, 112 N.H. at 277, 293 A.2d at 769.

■ Further, we note that the general releases executed by the plaintiff in connection with a suit against two members of the Newington Board of Fire Engineers do not bar the plaintiff's claim here. RSA 507:7-b (Supp. 1979) provides that the release of one tortfeasor from liability does not release other tortfeasors "unless its terms *expressly* so provide." (Emphasis added.) Nothing in the

332

releases executed by the plaintiff in the earlier lawsuit expressly refers to the defendants in the instant case.

*Reversed and remanded.*

All concurred.