Scouras v. Purity Supreme          CV-96-231-B     07/30/97

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Charles R. Scouras

    v.                                     Civil No. 96-231-B

Purity Supreme, Inc.


O R D E R


Charles Scouras sues his former employer, Purity Supreme, Inc. ("Purity") for wrongful discharge, defamation, deceit, negligent misrepresentation, and a violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A (1995). Purity moves for summary judgment on all claims. For the reasons that follow, I deny summary judgment on the wrongful discharge and defamation claims and grant summary judgment on the deceit, misrepresentation, and Consumer Protection Act claims.


I.   BACKGROUND

A.   Purity and its Employees

Purity at one time employed 6000 employees and operated 55

supermarkets.[1]  Charles Scouras worked at Purity's Lebanon, N.H. store from 1988 until February 1995.  At the time of his discharge, Scouras was a full-time produce clerk, although he had previously been an assistant produce manager.  Among Scouras's supervisors were George Hadlock, the assistant store manager; Roy Gee, the store manager; Pat Salese, Purity's district produce marketing specialist; and Steve Spellman, the local district manager.  Other employees at the Lebanon store included Anthony White, a friend of Scouras who was the produce manager until he voluntarily resigned to become a part-time employee; Rodney Martin, the produce manager who succeeded White; and Thomas Bircher, a produce clerk.

B.    **The Alleged Shorting Policy**

Scouras's complaint describes Purity's relationship with C & S, one of its produce suppliers.  Scouras asserts that Salese instructed Scouras and White during the summer of 1984 to regularly and falsely report to C & S that some of the highest priced merchandise that Purity ordered had not been delivered. This policy increased the profits in the produce department because Purity would get credit for the shorted items on its

---

[1]  Purity was subsequently sold in 1996 and is no longer in business.

2

account with C & S while still being able to sell all of the merchandise that was actually delivered.

White acknowledges that Salese told him that the employees should pick the most expensive items off the invoices and call them in as shortages. Bircher alleges in an affidavit that he also was told by Salese to short C & S, and that he did in fact report false shortages. Salese allegedly told Scouras after he complained about the shorting policy that Scouras's job was "on the line" and that "this is what the company wants." Scouras also alleges he complained about the policy to Gee and Hadlock.

After Gee and Hadlock failed to stop the shorting policy, Scouras telephoned C & S in September 1994 from the phone just outside the manager's office in the Lebanon store and reported the scheme to George J. Semanie, a senior vice president of C & S Semanie, while acknowledging that he had learned of a potential problem with the Lebanon store through contact with a Purity employee, does not specifically remember talking with Scouras.

Scouras alleges that he reported the scheme because he believed the policy was wrong and that other employees such as Bircher were also upset about the practice. According to Scouras, he also told three of his co-employees, Steve Fidele, Darlene Howe, and White, that he had called C & S. White

3

confirms Scouras's allegations and further asserts that C & S's drivers began to verify shipments shortly after Scouras's phone call to C & S.

## C.    Scouras's January 6, 1995 Counseling Session

Scouras had a counseling session on January 6, 1995, purportedly due to his persistent attitude problems. Purity asserts that Scouras's problems developed in 1994 after White resigned as produce manager, and Scouras, then the assistant produce manager, was passed over for the position in favor of Rodney Martin.  Scouras asserts that his attitude problem was directly caused by the hostility he faced after he made the telephone call to C & S and after he informed management, specifically Salese, that he would no longer participate in the shorting policy.

Store Manager Roy Gee, Assistant Store Manager George Hadlock, and Salese attended Scouras's counseling session.  The counseling record which Gee gave Scouras during the session indicated that Scouras was "not performing in a manner that is positive to the success of the produce department.  Reflecting a defeated attitude to other produce personel (sic) through verbal comments and work attitudes."

Scouras wrote in the comment section that, "Due to circum-stances far beyond my control, I felt like I was going to fail no matter what I did."  Scouras was demoted to a full-time produce clerk from an assistant produce manager as a result of the counseling session, and was sent for a two-week detail to Purity's Nashua store to expose him to a more positive work environment.

**D.    Scouras's January 25, 1995 Performance Review**

Shortly after Scouras returned from his stint at the Nashua store, Purity conducted a performance review of all full-time employees at the Lebanon store.  Each employee received a summary rating using a scale of one (the best score) to five (the worst score).  The performance review form also contained comment areas for the manager and the employee, as well as ratings for a number of individual tasks within the employee's area of responsibility. The performance review system was not implemented until December 1994, so this was Scouras's only performance review.

It is undisputed that Gee and Salese conducted Scouras's review.  In addition, Gee asserts that District Manager Steve Spellman participated in the review.  Scouras received a summary rating of four on his performance review, with poor attitude being the main problem with his performance.  Scouras was given

the lowest possible score for "Follows Work Procedures and Standards" and "Works Cooperatively as a Team Member". In his deposition, Gee admitted that he personally would have graded Scouras higher in some of the categories, and White alleges that Gee told him that Gee had little input into the performance evaluation. In the comment section, Gee wrote that, "Charlie must show a dramatic turnaround in his attitude toward accomplishing company goals in the produce dept. Charlie has exhibited a big improvement in attitude and is fully capable of getting 'Back on track' in a short period of time."

E.    **Purity's Reduction in Force**

Less than a month later, Purity conducted a reduction in force of seventy-eight employees across its stores. Unlike prior layoffs, which were conducted strictly on the basis of seniority, Purity's Human Resources Department used the recently-conducted performance reviews as the basis for choosing which employees would be laid off. At non-union stores such as the Lebanon store, any employee who had received a score of either four or five on the performance rating was laid off. Therefore, because he had received a score of four, Scouras was laid off as part of the Purity's reduction in force in February 1995.

6

## II.  STANDARD

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The party opposing the motion, Scouras in this case, must set forth specific facts showing that there remains a genuine issue for trial, demonstrating some factual disagreement sufficient to deflect summary disposition.  Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991). This burden is discharged only if the cited disagreement relates to a genuine issue of material fact.  Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992).

Since the purpose of summary judgment is issue finding, not issue determination, the court's function at this stage "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

7

trial." Stone & Michaud Ins., Inc. v. Bank Five for Sav., 785 F. Supp. 1065, 1068 (D.N.H. 1992) (quoting Anderson, 477 U.S. at 249). In making this determination, I must construe the evidence in the light most favorable to the non-movant and determine whether the moving party is entitled to judgment as a matter of law. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

## III. DISCUSSION

### A. Count I--Wrongful Discharge

To prevail on a claim for wrongful discharge, Scouras must prove that Purity (1) terminated him (2) out of bad faith, malice or retaliation and (3) because he performed acts which public policy would encourage or because he refused to perform acts prohibited by public policy. Short v. School Administrative Unit No. 16, 136 N.H. 76, 84 (1992). Purity accepts for purposes of this motion that Scouras's alleged actions surrounding the shortages were acts which public policy would encourage, and it is undisputed that Scouras was terminated. However, Purity argues that it is entitled to summary judgment on Scouras's wrongful discharge claim because Scouras has not established that Purity acted out of bad faith, malice, or retaliation in response

8

to Scouras's attempt to report and/or halt the shorting policy.

Bad faith is the equivalent of malice in the context of a wrongful discharge claim. Centronics Corp. v. Genicom Corp., 132 N.H. 133, 140 (1989); accord MacDonald v. Tandy Corp., 796 F. Supp. 623, 627 (D.N.H. 1992) (bad faith where company knew that termination was unreasonable and still decided to terminate employee); Godfrey v. Perkin-Elmer Corp., 794 F. Supp. 1179, 1187, & n.7 (D.N.H. 1992) (company's failure to investigate employee's sexual harassment complaint or remedy discriminatory practices sufficient evidence of bad faith). The question of whether a termination was the result of bad faith, malice, or retaliation ordinarily presents a question of fact for the jury. Monge v. Beebe Rubber Co., 114 N.H. 130, 133 (1974); Chagnon v. Union Leader Corp., 103 N.H. 426, 438 (1961).

Purity makes three related arguments in support of its assertion that Scouras has failed to offer sufficient evidence that Purity was motivated by bad faith, malice, or retaliation. First, Purity argues that Scouras cannot meet his burden because there is no causal link between his alleged telephone call "blowing the whistle" on the false shortages and his poor performance review. Scouras alleges that in September 1994 he spoke by telephone with George Semanie at C & S and told him that

9

employees at the store were falsely reporting produce shortages to C & S. Purity notes that Scouras was laid off many months after the phone call, and that Semanie himself does not remember whether Scouras was the employee who contacted him. However, there is some evidence in the record to support Scouras's claim that his supervisors at Purity were aware of the phone call. Scouras alleges that George Hadlock saw him on the telephone and that Hadlock looked aggravated. Scouras also alleges that he told Hadlock directly that he was talking to Semanie, but did not divulge the full nature of the conversation. In addition, White asserts that Hadlock directly told him that he had overheard Scouras, and that Scouras told him who he was talking to. Further, even if there were insufficient evidence to support a finding that Purity knew of Scouras's call to Semanie, there is ample evidence in the record to support a conclusion that Gee and/or Salese gave Scouras a poor performance review in part because he complained to Gee and Hadlock about the shorting policy. Thus, this argument cannot serve as a basis for summary judgment.

Second, Purity argues that it is entitled to summary judgment because the managers who evaluated Scouras in January 1995 could not have known that the evaluation would lead to his

10

layoff, and therefore there is no causal connection between the retaliation and the layoff.  I reject this argument.  Since it is undisputed that the poor performance rating was the "but for" cause of Scouras's termination, and there is sufficient evidence in the record to support a finding that Scouras's performance rating was the result of retaliation, a reasonable jury could conclude that Scouras was terminated because he had exposed or, at the very least, complained about the shorting policy.

Finally, Purity asserts as a further break in the causal connection that the Purity officials who decided to use the performance reports as a criteria for the layoffs had no knowledge of Scouras's situation at the Lebanon store.  This argument fails for the same reason as the second argument.  It does not matter for purposes of Scouras's wrongful termination claim whether the people who decided to use the performance reviews as layoff criteria had improper motivations so long as the performance review itself was the product of improper motives.  Accordingly, I deny Purity's motion for summary judgment on the wrongful termination claim.

## B.    Count II--Defamation

Scouras charges that his January 1995 performance evaluation is defamatory.  To prove defamation under New Hampshire law,

Scouras must show that the "defendant failed to exercise reasonable care in publishing, without a valid privilege, a false and defamatory statement of fact about the plaintiff to a third party." Independent Mechanical Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 138 N.H. 110, 118 (1993); accord Duchesnaye v. Munro Enter., 125 N.H. 244, 250 (1984). A statement is defamatory only if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people." Nash v. Keene Publ'g Corp., 127 N.H. 214, 219 (1985). Statements that are substantially true are not actionable. Simpkins v. Snow, 139 N.H. 735, 740 (1995).

Purity first argues that the defamation claim fails because the performance report was not published to a third party but was seen only by other Purity employees. The Restatement of Torts has rejected this view. Restatement (Second) of Torts, § 577(1) cmt. i (1977). Several courts have followed the Restatement and recognized that an intracompany communication can satisfy the publication requirement, see F.D.I.C. v. S. Prawer & Co., 829 F. Supp. 439, 449 (D. Me. 1993) (applying Maine law); Lyons v. National Car Rental Sys., Inc., 30 F.3d 240, 244 (1st Cir. 1994) (applying Massachusetts law). Other courts have concluded that intracompany communications generally do not

12

constitute actionable publications.  See Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1552 (10th Cir. 1995) (applying Oklahoma law); Otteni v. Hitachi Am., Ltd., 678 F.2d 146, 147 (11th Cir. 1982) (applying Georgia law); Halsell v. Kimberly-Clark Corp., 683 F.2d 285, 289 (8th Cir. 1982) (applying Wisconsin law).  The New Hampshire Supreme Court has not decided whether to follow the Restatement on this issue.  However, it has twice cited § 577 of the Restatement with approval, see Duchesnaye, 125 N.H. at 253; Thomson v. Cash, 119 N.H. 371, 375 (1979), and I have been presented with no reason to expect that the New Hampshire Supreme Court would depart from the Restatement's position regarding publication.  Therefore, I reject Purity's argument.

Purity next argues that I should grant summary judgment because the allegedly defamatory material is merely the opinion of the supervisors regarding Scouras's work.  An opinion can serve as the basis for a defamation claim only if the opinion reasonably implies false and defamatory facts.  Milkovich v. Lorain Journal Co., 497 U.S. 1, 20-21 (1990); Duchesnaye, 125 N.H. at 249; Nash, 127 N.H. at 219.  However, a statement of opinion is not actionable unless it is "sufficiently factual to be susceptible of being proved true or false."  Milkovich, 497 U.S. at 21; accord Phantom Touring, Inc. v. Affiliated

13

Publications, 953 F.2d 724, 727-28 (1st Cir. 1992). Further, an opinion cannot constitute defamation if it is apparent from the surrounding context that the opinion is based solely on disclosed non-defamatory facts. Standing Comm. on Discipline of the U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman, 55 F.3d 1430, 1439 (9th Cir. 1995); Nash, 127 N.H. at 219; Restatement (Second) of Torts § 566 cmt. c (1977) ("A simple expression of opinion based on disclosed . . . nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").

In this case, Scouras's performance evaluation depends upon undisclosed facts upon which the opinions were based. See Pease v. Telegraph Publ'g Co., 121 N.H. 62, 66 (1981) (no defamation where letter to the editor fully disclosed the factual basis upon which opinion was based). The performance evaluation summarily ranked Scouras's employment skills in a number of categories without disclosing the facts forming the basis for the opinion. Scouras has submitted evidence by which a reasonable jury could conclude that the rankings were motivated not by desire to accurately evaluate Scouras's work but instead by malice and a desire to retaliate for Scouras's outspokenness and whistle blowing. Therefore, I reject Purity's argument.

14

Purity also argues that it is entitled to summary judgment on the defamation claim because the statements contained in the performance review are conditionally privileged. New Hampshire recognizes a conditional privilege for statements that "although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth" as long as the statements were not made with actual malice. Simpkins, 139 N.H. at 740 (internal quotation omitted); Pickering v. Frink, 123 N.H. 326, 329 (1983); Jones v. Walsh, 107 N.H. 379, 381 (1966). Whether a conditional privilege exists is generally a question for the jury. Pickering, 123 N.H. at 329. Once a privilege has been established, a plaintiff can defeat the privilege only by proving that the defendant acted with malice. Duchesnaye, 125 N.H. at 253. Because material questions of fact exist as to whether Purity acted with malice, I reject Purity's argument and deny summary judgment on the defamation count.

C. **Counts III and IV--Deceit and Negligent Misrepresentation**

Scouras next claims that Purity's Performance Evaluation intentionally and negligently defrauded him. Reasonable reliance is an element of a claim for both negligent misrepresentation and intentional misrepresentation. See Proctor v. Bank of New

15

<u>Hampshire</u>, 123 N.H. 395, 399 (1983) (fraudulent misrepresentation must be made with the intention of causing the plaintiff to act on the misrepresentation); <u>Hydraform Prods. Corp. v. American Steel & Aluminum Corp.</u>, 127 N.H. 187, 200 (1985) (negligent misrepresentation claim requires proof that plaintiff justifiably relied upon the misrepresentation). Purity's alleged misrepresentations are contained in the performance review. These statements could not have induced Scouras to act because Scouras clearly disagreed with them. Further, Scouras's attempt to argue that Purity defrauded itself because the misstatements caused Scouras's layoff do not state a cause of action for which he can recover on a misrepresentation theory. I therefore grant summary judgment in favor of Purity for Counts III and IV.

**D.    <u>Count V--The New Hampshire Consumer Protection Act</u>**

Scouras additionally alleges that Purity violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A (1995 and Supp. 1996) ("CPA"). The CPA states, in pertinent part:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive practice in the conduct of any trade or commerce within this state.

<u>Id.</u> at § 358-A:2.

16

I have previously determined that the CPA does not apply to the employee-employer relationship. See Bartholomew v. Delahaye Group, Inc., No. Civ. 95-20-B, 1995 WL 907897, at *9-10 (D.N.H. Nov. 8, 1995). While Scouras disagrees with the outcome, he concedes that Bartholomew applies since it is undisputed that Scouras's claims derive from his employment relationship with Purity. I therefore grant summary judgment for Purity on Count V.

## IV.  CONCLUSION

For the foregoing reasons, I deny summary judgment on Scouras's wrongful discharge and defamation claims (Counts I and II), and grant summary judgment on Scouras's deceit, misrepresentation, and Consumer Protection Act claims (document no. 18).

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

July 30, 1997

cc:  David KillKelley, Esq.
     Arthur G. Telegen, Esq.
     Jonathan A. Keselenko, Esq.
     James Ogorchock, Esq.

17