**Max HUGEL, Plaintiff, Appellant,**

v.

**MILBERG, WEISS, BERSHAD, HYNES & LERACH, LLP, Gold, Bennett & Cera, LLP, Shapiro, Haber & Urmy, LLP, and Wolf, Popper, LLP, Defendants, Appellees.**

No. 98–1653.

United States Court of Appeals, First Circuit.

Heard Jan. 7, 1999.

Decided April 13, 1999.

Andrew D. Dunn with whom Daniel E. Will was on brief for appellant.

William L. Chapman with whom Pamela E. Phelan was on brief for appellees.

Before LYNCH, Circuit Judge,
COFFIN and CAMPBELL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Appellant Max Hugel contends that he was defamed by allegations in a complaint filed in a federal securities fraud lawsuit (the "*Presstek* litigation") to which he was not a party. He brought suit in state court seeking damages for defamation and

legal malpractice. The defendants, four law firms, removed the case to federal court and then moved to dismiss. Concluding that neither of Hugel's claims was viable, the district court granted the motion. The court wrote a thoughtful opinion recognizing that certain aspects of the defamation claim were close, but explaining that the privilege given by New Hampshire law to statements made in judicial proceedings protected the challenged allegations. We agree with the court's reasoning on that issue, and see no need to reiterate its analysis. We add only a few brief comments. We also hold that, because the privilege bars any civil damages based on protected statements, the district court properly dismissed the malpractice claim as well.

### A. Defamation Claim

 As the district court recognized, New Hampshire law provides "very broad protection" to statements made in the course of judicial proceedings. *See* Order at 9. A statement falls outside the privilege only if it is " 'so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety,' " *McGranahan v. Dahar*, 119 N.H. 758, 408 A.2d 121, 126 (N.H.1979) (citation omitted),[1] and all doubts are to be resolved in favor of pertinency and application of the privilege, *id.* at 127. It is the breadth of this protection that persuaded the district court that the privilege applied

to all of the challenged statements, though some of them "approach the protective limit of the privilege." Order at 8.

We agree with the district court that certain of the objectionable statements—in particular, those alleging organized crime links—were connected only obliquely to the underlying fraud charges. These allegations, however, were contained in a background description of the intimate association between Hugel and a key *Presstek* litigation defendant, Robert Howard. The two men served together as president and vice president of Howard's company, Centronics, and they allegedly engaged in reciprocal stock manipulations for each other's benefit on five occasions. The additional allegation that Hugel was involved in organized crime reasonably may be viewed as more than an attempt to establish "guilt by association." In light of Hugel's close relationship with Howard, the allegation that Hugel had serious criminal ties, combined with the assertions that Centronics had dealings with Las Vegas casinos that were linked to organized crime or "frequently subject to federal organized crime investigations," reinforces an inference that Howard was involved in ongoing, illegal activities. Such an inference is relevant to whether Howard knowingly participated in the securities fraud charged in the *Presstek* lawsuit. Though characterizing Hugel as an organized crime figure may have been at the margin of relevance,[2] we cannot say that the state-

---

1. The standard is expressly "not conditioned on the actor's good faith," *McGranahan*, 408 A.2d at 124, because the public's interest in judicial proceedings " 'is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives,' " *id.* (quoting *Supry v. Bolduc*, 112 N.H. 274, 293 A.2d 767, 769 (N.H.1972)). The court noted that the pertinence standard would have the effect of excluding from protection "statements made needlessly and wholly in bad faith," *see id.*, but occasionally would protect malicious statements because they were pertinent to the proceeding, *see id.*

2. In seeking to support his argument that the challenged statements were irrelevant to the

*Presstek* litigation, Hugel cites a case that presents a useful contrast because—unlike the allegations here—the statements clearly fell into the "palpably irrelevant" category. In *Nguyen v. Proton Technology Corp.*, 69 Cal. App.4th 140, 81 Cal.Rptr.2d 392 (Cal.Ct.App. 1999), a pre-litigation letter from a law firm concerning potential unfair competition claims reported that one of the employees allegedly engaged in the unfair acts had been in prison "for repeatedly and violently assaulting his wife." Hugel's alleged ongoing involvement in criminal activities against a backdrop of securities fraud perpetrated by Hugel and Howard is a far cry from such an extraneous statement.

ments were so "palpably irrelevant" that, giving them the benefit of any doubt, they fell outside the privilege.[3]

We wish to emphasize that, in rejecting appellant's defamation claim, we do not condone quick resort to reputation-harming allegations at the far reaches of relevancy. Here, the defendants' decision to file an amended complaint deleting all references to Hugel raises some question as to their level of certainty regarding the original statements.[4] Fed.R.Civ.P. 11(b)(3) imposes a duty on attorneys to certify that, "to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the allegations and other factual contentions in a pleading have evidentiary support. Ensuring the integrity of their representations is a serious responsibility that attorneys may not take lightly, and we caution against the deliberate or careless use of unsubstantiated allegations, notwithstanding their relevance.

### B. *Legal Malpractice Claim*

 Although the absolute privilege for statements made in judicial proceedings was recognized in *McGranahan* in the context of a defamation claim, the language of that opinion, subsequent case law, and policy considerations make it clear that the privilege bars any civil claim for damages based on statements protected by the privilege. In *McGranahan*, the court noted "the general rule ... that statements made in the course of judicial proceedings are absolutely privileged *from civil actions,* provided they are pertinent to the subject of the proceeding," 408 A.2d at 124 (emphasis added). The court reiterated this general statement of the rule in another defamation case, *Pickering v. Frink*, 123 N.H. 326, 461 A.2d 117, 119 (N.H.1983),[5] and recently confirmed it in a case raising claims of, *inter alia,* negligence, fraud, and intentional infliction of emotional distress, see *Provencher v. Buzzell–Plourde Associates,* 711 A.2d 251, 255 (N.H.1998) (citing *McGranahan* and *Pickering* ).[6] We thus think it clear that the Supreme Court of New Hampshire views the privilege to extend to any civil claim arising from statements made in the course of a judicial proceeding.

In addition to the explicit language to that effect, the policy underlying the privilege requires that civil claims other than for defamation also be extinguished. The rule's absolute bar "reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties,

---

**3.** Hugel asserts that the district court applied an incorrect standard because it found only that the allegations concerning Hugel "might be" or "could be" pertinent to the claims in the underlying securities litigation, rather than determining unconditionally that they were relevant. The findings conform to the *McGranahan* standard, which requires a court to determine whether a reasonable person *"can"* doubt their irrelevancy or impropriety. The court's conclusion that the statements "might be" or "could be" pertinent is equivalent to a conclusion that a reasonable person "can" find them to be so. The ruling also reflects the directive in *McGranahan* to resolve doubts in favor of applying the privilege. *See* 408 A.2d at 127.

**4.** Hugel's attorney acknowledged at oral argument, however, that he had told the defendants that a suit might not be filed if the allegations were withdrawn. The decision to withdraw the allegations therefore may not have reflected lack of confidence in them but simply a judgment that their usefulness was offset by the greater risk and/or costs of litigation.

**5.** The *Pickering* court stated: "New Hampshire law recognizes that certain communications are absolutely privileged and therefore immune from civil suit." 461 A.2d at 119. The opinion also repeated, almost verbatim, the statement of the rule specifically with respect to statements made in the course of judicial proceedings, as quoted above from *McGranahan. See id.*

**6.** The court in *Provencher* stated, *inter alia:* "Statements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings." 711 A.2d at 255.

attorneys, and witnesses, to speak freely in the course of judicial proceedings." *McGranahan,* 408 A.2d at 124. This policy would be nullified if individuals barred from bringing defamation claims could seek damages under other theories of liability. Moreover, as the district court observed, Hugel's malpractice claim is, in essence, a claim that he was defamed by allegations in the *Presstek* complaint. In these circumstances, Hugel's malpractice claim unquestionably is barred by the privilege. *Compare Blanchette v. Cataldo,* 734 F.2d 869, 877 (1st Cir.1984) (holding that similar privilege under Massachusetts law bars any civil action based on the statements); *Correllas v. Viveiros,* 410 Mass. 314, 572 N.E.2d 7, 17–19 (Mass. 1991) ("A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort.").[7]

### C. *Certification*

■ Hugel moved to certify both the defamation and legal malpractice issues to the New Hampshire Supreme Court, claiming that each implicates an unresolved question of state law. We disagree that there is any uncertainty warranting certification.

■ As discussed in Section A on the defamation issue, the standard for evaluating statements made during the course of judicial proceedings is clear: an absolute privilege attaches if the statements are "pertinent to the subject of the proceeding," *see McGranahan,* 408 A.2d at 124. Hugel's assertion that certification is necessary because the New Hampshire Supreme Court has not had occasion to provide further guidance on the standard misses the mark. As the district court recognized, "[w]hen state law is sufficiently clear to allow [a federal court] to predict its course, certification is both inappropri-

ate and an unwarranted burden on the state court." Order at 11 n. 2 (citing *Armacost v. Amica Mut. Ins. Co.,* 11 F.3d 267, 269 (1st Cir.1993)). *See also Marbucco Corp. v. Suffolk Construction Co.,* 165 F.3d 103, 105 (1st Cir.1999) ("It is inappropriate ... to use certification 'when the course state courts would take is reasonably clear.'") (quoting *Porter v. Nutter,* 913 F.2d 37, 41 n. 4 (1st Cir.1990)). The New Hampshire court cannot be charged with failure to make its standard reasonably clear. Although we may err in applying that standard, we act within the range of discretion entrusted to us.

The malpractice issue as we have resolved it involves a similarly straightforward application of unambiguous state case law. There is no need for certification.

*Accordingly, the judgment of the district court is affirmed.*

---

7. We find it unnecessary to consider the district court's alternative basis for dismissing the malpractice claim, that Hugel has failed to identify any cognizable legal duty owed to him by the defendants.