**TALENTBURST, INC., Plaintiff**

v.

**COLLABERA, INC. (f/k/a Global Consultants, Inc.), Defendant.**

**Civil Action No. 08–10940–WGY.**

United States District Court, D. Massachusetts.

July 25, 2008.

---

Sally L. Adams, The Law Office of Sally L. Adams, Milton, MA, for Plaintiff.

Scott Joseph Connolly, Robert M. Shea, Morse, Barnes–Brown & Pendleton, P.C., Waltham, MA, Charles E. McDonald, III, Ogletree Deakins Nash Smoak & Stewart P.C., Greenville, SC, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Raj Mohan Pallerla ("Pallerla"), an employee of the plaintiff TalentBurst, Inc. ("TalentBurst"), left the company to work instead for the defendant Collabera, Inc. ("Collabera"). This turn of events gives rise to the instant suit, in which Talent-Burst asserts three causes of action against Collabera.

First, TalentBurst asserts a claim of breach of fiduciary duty, alleging that Pallerla's defection to Collabera was a violation of the fiduciary duty of loyalty that he owed to TalentBurst and that Collabera should be held liable for "aiding and abet-

ting" the violation because it provided Pallerla with encouragement and assistance. Second, TalentBurst asserts a claim of tortious interference with contractual and advantageous relations, alleging Collabera's offer of employment induced Pallerla to breach a contractual obligation he had to TalentBurst by violating a covenant not to compete or solicit customers. Finally, TalentBurst asserts that Collabera's actions in assisting Pallerla to breach his fiduciary duty and in interfering with contractual relations constitute a violation of Massachusetts General Laws chapter 93A section 11 ("chapter 93A").

Collabera moves to dismiss the claim in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

### A. Procedural Posture

TalentBurst filed its complaint in the Massachusetts Superior Court sitting in and for the county of Middlesex in May 2008. *See* Compl. [Doc. 1 Ex. 1] (including summons that gives date of service as May 15, 2008). Collabera removed the suit to this Court on June 3, 2008. Notice of Removal [Doc. 1]. The next day, June 4, Collabera filed the motion to dismiss [Doc. 5] and a supporting memorandum ("Mem. in Supp.") [Doc. 6]. TalentBurst filed a memorandum in opposition ("Mem. in Opp.") on June 17, 2008. On July 8, Collabera filed a reply memorandum [Doc. 13].

### B. Alleged Facts

TalentBurst is a corporation that provides information technology staff to clients.[1] *See* Compl. ¶ 2. It hired Pallerla as a systems administrator in February 2006. *Id.* ¶ 4. As a condition of Pallerla's employment, he was required to sign an

---

1. It also provides "regulatory compliance so- lutions" for clients. Compl. ¶ 2.

employment agreement that contained a Covenant Not to Compete or Solicit Customers (the "Covenant"). *Id.* ¶ 6. The Covenant, which all TalentBurst employees are required to sign, is designed to protect TalentBurst's "substantial goodwill, valuable relationships with customers, trade secrets, and particular means or methods of conducting its business." *Id.* ¶ 5. Of particular relevance here, the Covenant prohibited Pallerla from accepting certain employment for a period of twelve months after he stopped working at TalentBurst.[2] *Id.* ¶ 6.

Collabera also is in the business of providing information technology staff to clients. *Id.* ¶ 8. In March 2006, TalentBurst signed a consulting services agreement with Collabera, which provided that TalentBurst staff would perform work for Collabera's clients. *Id.* ¶ 8. In April 2006, Pallerla was assigned to work on a long-term project for one of Collabera's clients ("the End Client") under the terms of the agreement. *Id.* ¶ 9. Pallerla continued in this assignment without incident until September 27, 2007. On that date, Pallerla notified TalentBurst that he was resigning, effective the next day. *Id.* ¶ 11. In response, TalentBurst reminded Pallerla of the terms of the Covenant. *Id.* ¶ 12. Pallerla ceased working for TalentBurst on September 28, 2007. *See id.* ¶ 11.

On November 28, 2007, TalentBurst discovered that Pallerla was employed by Collabera and that, despite his resignation from TalentBurst, he had continued to work on his assignment for the End Client without any interruption. *Id.* ¶ 15. This employment situation, which dictates the conclusion that Pallerla immediately entered Collabera's employment upon resigning from TalentBurst, violated the Covenant to which Pallerla agreed. *Id.* ¶ 13. TalentBurst made inquiries of Collabera regarding Pallerla's employment, to which Collabera "knowingly made false representations ... or otherwise sought to mislead TalentBurst concerning its continuing relationship with or employment of" Pallerla. *Id.* ¶ 17. Finally, in January 2008, Collabera admitted that it employed Pallerla and that Pallerla continued working for the End Client at Collabera's direction. *See id.* ¶ 18.

In February 2008, TalentBurst sent a demand letter to Collabera, in which it informed Collabera of the Covenant that Pallerla had signed.[3] *Id.* ¶ 19. Collabera responded by claiming that TalentBurst "agreed to waive any restrictive covenant that [it] may have with regard to the hiring or engaging of any former consultants" when it signed the consulting services agreement with Collabera. *Id.* ¶ 20. TalentBurst denies that this is the case.

### C. Federal Jurisdiction

The Court has diversity jurisdiction of this case pursuant to 28 U.S.C. § 1332.

## II. ANALYSIS

### A. Breach of Fiduciary Duty

Collabera argues that the claim for breach of fiduciary duty must be dismissed because the alleged facts, taken in the light most favorable to TalentBurst, fail to demonstrate that Collabera owed a fiduciary duty to TalentBurst. Mem. in Supp. at 3–4. Collabera reasons that the relation-

---

2. The exact restrictions placed on Pallerla by the Covenant are not clear. TalentBurst neither makes specific allegations about the specific terms of the Covenant nor attaches a copy of the employment agreement to the complaint.

3. TalentBurst, however, alleges Collabera was aware of the Covenant prior to this correspondence. *See* Compl. ¶ 10.

ship between it and TalentBurst amounted only to an arms-length business transaction, which generally does not give rise to a fiduciary relationship. *Id.* at 2–3 (citing *Savoy v. White,* 139 F.R.D. 265, 267 (D.Mass.1991)) (Bowler, M.J.). Furthermore, Collabera argues that no special circumstances, such as a longstanding relationship or an abuse of a confidence, that might suggest the existence of a fiduciary relationship are present here. *Id.* at 2, 4. Finally, Collabera notes that the complaint fails even to allege the existence of a fiduciary relationship between the two companies. *Id.* at 4.

TalentBurst does not disagree with any of these contentions. It, however, asserts that they are irrelevant because it is not proceeding on the theory that Collabera itself breached a fiduciary duty. Instead, TalentBurst asserts that Collabera may be held liable for *Pallerla's* breach of a fiduciary duty to his employer because it "actively participated[,] substantially assisted in or encouraged the breach to the degree that [it] could not reasonably be held to have acted in good faith." Mem. in Opp. at 4.

■ The courts of Massachusetts, including the Supreme Judicial Court, have accepted that a defendant can be held liable, even if he has no fiduciary duty to the plaintiff, for assisting a breach of fiduciary duty owed by another. *See, e.g., Spinner v. Nutt,* 417 Mass. 549, 556, 631 N.E.2d 542 (1994) (noting that "liability arises when a person participates in a fiduciary's breach of duty") (citing *Augat, Inc. v. Aegis, Inc.,* 409 Mass. 165, 565 N.E.2d 415 (1991)); *Kurker v. Hill,* 44 Mass.App. Ct. 184, 190 n. 5, 689 N.E.2d 833 (1998) (ruling that complaint sufficiently stated claim for "aiding and abetting breach of fiduciary duty"); *Murphy v. Murphy,* 2006 WL 3267789, at *18 (Mass.Super.2006) (Gants, J.). The theory of recovery advanced by TalentBurst is viable, and the fact that Collabera and TalentBurst did not have a fiduciary relationship is not fatal to TalentBurst's claim. Thus, the question becomes whether TalentBurst has adequately alleged (1) an underlying breach of fiduciary duty by Pallerla and (2) sufficient participation or involvement therein by Collabera to support the "aiding and abetting" claim.

Collabera asserts that TalentBurst cannot allege a breach of fiduciary duty by Pallerla because he, although an employee, owed no duty of loyalty to TalentBurst. Reply [Doc. 13] at 2–5. Although TalentBurst alleges Pallerla owed it a duty of loyalty, Compl. ¶ 7, the Court is not obligated to accept as true, even at the motion to dismiss stage, conclusory legal assertions. *See, e.g., Beddall v. State St. Bank and Trust Co.,* 137 F.3d 12, 17 (1st Cir. 1998). The Court may appropriately evaluate for itself whether, given the factual allegations of the complaint, it is reasonable to infer that Pallerla had a fiduciary duty.

At common law, employees have a duty of loyalty to their employer, which precludes competing with their employer. *See* Restatement (Third) of Agency § 8.04 (2006). Massachusetts, however, appears to have adopted a more limited rule; multiple cases state only that "[e]mployees *occupying positions of trust and confidence* owe a duty of loyalty to their employer." *Chelsea Indus., Inc. v. Gaffney,* 389 Mass. 1, 11, 449 N.E.2d 320 (1983) (emphasis added). The definition of "position of trust and confidence" has not been clearly defined. It is clear that it encompasses company officers, directors, executives, and partners, *Sterling Research, Inc. v. Pietrobono,* 2005 WL 3116758, at *10 (D.Mass.2005) (Saylor, J.) (citing cases). In addition, a Massachusetts court held a complaint sufficiently stated a claim under

this standard with regard to a law firm associate who stole clients from her employer prior to terminating her employment. *Grady v. Boyle,* 1994 WL 162620, at *2 (Mass.App.Div.1994).

■ Three factors lead the Court to conclude that the duty of loyalty does not extend to "rank-and-file" employees under Massachusetts law, absent special circumstances indicating they held a position of "trust and confidence."[4] First, under the law of other jurisdictions, "the employer-employee relationship is not one from which the law will necessarily imply a fiduciary duty in every case." 19 Richard A. Lord, Williston on Contracts § 54:26 (4th ed.). Accordingly, although TalentBurst suggests that the employee/employer relationships always, by definition, gives rise to the fiduciary duty of loyalty, this is not the case. Second, the plain language of the case law in Massachusetts indicates that only a particular subset of employees, not all, owe a fiduciary duty of loyalty to their employer. If every employee owed a fiduciary duty, the words "in a position of trust and confidence" would be surplusage.

Finally, every case save two the Court reviewed involving a viable action for breach of a fiduciary duty of loyalty under Massachusetts law dealt with an employee who occupied a higher rung on the corporate ladder, such as a manager or executive. The two exceptions were cases involving law firm associates, who likely satisfied the standard due to their access to confidential information. *See supra* note 3. Otherwise, however, the Court has found no instance where a duty of loyalty was imposed under Massachusetts law on "rank-and-file" employees. Similarly, courts have refused to find that non-managerial at-will employees owe their employers a fiduciary duty of loyalty when applying New Hampshire law, which is identical to the Massachusetts standard. *See White v. Ransmeier & Spellman,* 950 F.Supp. 39, 43 (D.N.H.1996).

In sum, Massachusetts law makes clear that only certain employees owe their employers a fiduciary duty of loyalty. TalentBurst, however, makes no allegations in the complaint that permit this Court to conclude that Pallerla is one of those employees. First, Pallerla is described in the complaint as a systems administrator who was hired out to clients to perform IT work. His title, the type of work associated with it, and the fact he was hired out to do work for clients all indicate Pallerla was a "worker bee," not a manager, executive, or officer. Second, TalentBurst makes no allegations in the complaint that give rise to the inference that Pallerla was entrusted with confidential information or that other special circumstances existed such that he could be said to have occupied a position of "trust and confidence."[5] Accordingly, he falls outside the scope of the

---

**4.** For instance, a lower-level employee easily could be considered to occupy a position of "trust and confidence" if they are provided with access to confidential information. This may be why the associate in *Grady* was considered to satisfy the standard even though she did not hold a position high on the corporate hierarchy. Information relating to litigation conveyed to law firms by clients may be considered confidential due to the attorney-client privilege or work product doctrine, for instance, such that an associate who is permitted to access that information can be considered in a position of "trust and confi-

dence." *See Meehan v. Shaughnessy,* 404 Mass. 419, 438, 535 N.E.2d 1255 (Mass.1989) (finding that law firm associate occupied position of trust sufficient to justify imposition of duty of loyalty because he had "access to clients and information concerning clients").

**5.** Notably, although it is clear that the employment agreement, including the Covenant, created *contractual* duties on Pallerla's part, TalentBurst cites no authority for the proposition that the signing of a restrictive covenant also creates a fiduciary obligation.

class of employees that, under Massachusetts law, owe a fiduciary duty of loyalty to their employers. Given that the allegations of the complaint thus do not state a predicate act of breach of fiduciary duty on Pallerla's part, the claim against Collabera for "aiding and abetting" a breach of fiduciary duty must fail.

For all the foregoing reasons, the motion to dismiss count I of the complaint is GRANTED.

### B. Tortious Interference

■ There are four elements that must be proven in order to prevail on a claim of tortious interference with contractual and advantageous relations. A plaintiff must demonstrate (1) that he had a contract with a third party; (2) the defendant knowingly induced the third party to break the contract; (3) the defendant's interference was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. *Network Sys. Architects Corp. v. Dimitruk,* 2007 WL 4442349, at *9 (Mass.Super.2007) (Fabricant, J.). Collabera concedes that TalentBurst adequately alleges the second and fourth elements of the claim but asserts that TalentBurst has failed to allege the first and third elements.

#### 1. Element 1—Existence of a Contract

Collabera does not argue that TalentBurst fails to allege the existence of *any* contract; indeed, the complaint clearly alleges that Pallerla signed an employment agreement. Rather, Collabera asserts TalentBurst has failed to plead the first element of the claim because it cannot demonstrate that the employment agreement, including the Covenant, is valid and enforceable. Mem. in Supp. at 6. Collabera correctly notes that TalentBurst failed to attach a copy of the employment agreement, which is undisputedly the basis for

the tortious interference claim, to the complaint, nor did TalentBurst specifically allege that the Covenant is valid. *Id.* at 5. Collabera suggests the Court therefore must conclude that the Covenant is invalid and, consequently, dismiss the count because "a third party cannot be held liable for intentional interference ... on an invalid and unenforceable contract." *Id.*

■ While Collabera correctly states the effect of an invalid contract on a tortious interference with contractual relations claim, *see Telectronics, Inc. v. Downing,* 1987 WL 9904 (D.Mass.1987) (Zobel, J.), it incorrectly assesses the inferences that the Court must draw at this stage of litigation. Simply put, Collabera concludes that this Court must draw an adverse inference of invalidity of contract in the absence of the actual employment agreement or a specific allegation of validity. When evaluating a motion to dismiss, however, the Court must draw all reasonable inferences in the plaintiff's favor. *See, e.g., Garrett v. Tandy Corp.,* 295 F.3d 94, 97 (1st Cir.2002). Here, the most favorable reasonable inference is that Pallerla's employment agreement—and its non-competition clause—is valid.

■ Non-competition agreements are not invalid per se. "A covenant not to compete contained in a contract for personal services will be enforced if it is reasonable, based on all the circumstances." *All Stainless, Inc. v. Colby,* 364 Mass. 773, 778, 308 N.E.2d 481 (1974). TalentBurst alleges that the non-competition agreement restrained Pallerla's employment for one year, Compl. ¶ 6, and Massachusetts courts have concluded that covenants not to compete of similar length were reasonable. *See, e.g., EMC Corp. v. Allen,* 1997 WL 1366836, at *1 (Mass.Super.1997) (Kottmyer, J.); New *England Circuit Sales, Inc. v. Glidden,* 1994 WL 16009938, at *4 (Mass.Super.1994) (Welch, J.) (stat-

ing "[o]ne year is within the acceptable range in terms of duration of a covenant not to compete" and noting that other Massachusetts courts have upheld lengths as long as five years). While it is true that non-competition agreements must also be reasonable in geographic scope, the complaint alleges that both TalentBurst and Collabera are engaged in business in Massachusetts. Compl. ¶¶ 2–3. Finally, TalentBurst alleges that the purpose of the non-competition agreement is, inter alia, to protect its goodwill, which Massachusetts courts have found to be a legitimate business interest that may be protected through the use of non-competition agreements. *National Eng'g Serv. Corp. v. Grogan,* 2008 WL 442349, at *4 (Mass.Super.2008) (Hogan, J.). Notably, courts have been especially willing to enforce non-competition agreements to preserve goodwill in the context of the staffing industry, which is at issue here. *Id.*

■ Taken together, these allegations, when taken as true and viewed in the light most favorable to TalentBurst, give rise to the reasonable inference that the non-competition agreement is reasonable and valid. Therefore, the Court declines to dismiss the tortious interference claim on the basis that TalentBurst has failed adequately to allege the first element of the claim.

### 2. Element 3—Improper Means or Motive

■ Collabera asserts that TalentBurst has failed to satisfy the third element of the tortious interference claim because the complaint does not put forth any factual allegations from which it could be concluded that Collabera relied upon improper means or motive in interfering with the relationship between Pallerla and Talent-Burst. Mem. in Supp. at 6–8.

The only specific improper means cited by TalentBurst, who correctly notes that improper means may be proven through a showing that the defendant violated a statute or common law precept, is that Collabera "aided and abetted" Pallerla's breach of fiduciary duty. Mem. in Supp. at 7. As discussed above, however, it appears as matter of law—at least as the facts are alleged in the complaint—that Pallerla did not owe a duty of loyalty. Therefore, there can be no "aiding and abetting" to serve as the basis of improper means.

■ TalentBurst does not allege any other statutory or common law violation that could satisfy the improper motive/means requirement.[6] It also fails to allege that Collabera had a specific improper goal—such as to harm TalentBurst or to obtain access to its confidential information—it hoped to achieve by hiring Pallerla.[7] Rather, it looks like Collabera

---

6. Although TalentBurst asserts a chapter 93A claim, this is inadequate to support a finding of improper means or motive. The chapter 93A claim is itself dependent upon the tortious interference claim. Mem. in Supp. at 8. In other words, an argument that TalentBurst adequately states a tortious interference claim because it asserts a chapter 93A claim would be circular because one of the "unfair and deceptive trade practices" alleged is tortious interference.

7. TalentBurst does vaguely suggest that improper motive or means can be inferred because, after Pallerla quit, Collabera misled

TalentBurst as to the existence of an employment relationship and then later claimed TalentBurst waived Pallerla's restrictive covenant via the consulting deal between TalentBurst and Collabera. *See* Mem. in Supp. at 7.

This is unpersuasive. All this demonstrates, at most, is that Collabera attempted to protect Pallerla or, perhaps, itself from TalentBurst's anger upon finding out what Pallerla did after leaving TalentBurst. This later behavior, however, has little relevance upon the issue of whether Collabera's reasons for hiring Pallerla or the method by which it enticed him to leave TalentBurst were improper.

hired to Pallerla so that it could "eliminate the middleman" and save money by employing Pallerla's services directly, avoiding the need to pay a commission (or something similar) to TalentBurst. Advancement of one's economic interest, however, is not an improper motive. *See United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 817, 551 N.E.2d 20 (1990).[8] Finally, TalentBurst fails to allege or that Collabera utilized improper means—such as making fraudulent statements or threats—to induce Pallerla to leave Talent-Burst. Rather, TalentBurst's complaint indicates that all Collabera did was perhaps to recruit Pallerla and then offer him a job. Massachusetts courts, however, have held that the offering of a job to a competitor's at-will employee, including one that provides better pay and benefits, does not as matter of law constitute improper means. *Perishables By Air, Inc. v. OceanAir, Inc.,* 68 Mass.App.Ct. 1110, 2007 WL 675334 at *6 (2007).

Accordingly, the question is whether the fact that Collabera interfered with a restrictive covenant governing a competitor's employee, as opposed to some other contractual obligation, itself creates a presumption that Collabera had an improper motive. Two cases from Massachusetts state courts suggest this might be true. *See W.B. Mason Co., Inc. v. Staples, Inc.,* 2001 WL 227855, at *7–8 (Mass.Super.2001) (VanGestel, J.); *Cambridge Internet Sols., Inc. v. Avicon Group,* 1999 WL 959673, at *3 (Mass.Super.1999) (Quinlan, J.) ("Where [plaintiff] has established that it had a non-competition agreement with [its former employee], and that the defendants . . . solicited [the employee] to leave [the plaintiff] to accept employment

with [the defendant], it has stated a sufficient cause of action to survive a motion to dismiss."). Both cases, however, are distinguishable from the instant case because the defendant corporations did more than simply hire a competitor's employee. They then obtained and used information—such as customer information or business plans—from the employee. There is no evidence that Collabera has done anything similar here. Furthermore, there is a circumstance here not present in these cases—that Collabera was paying TalentBurst to use Pallerla's services—that presents a more legitimate motive for Collabera's actions (saving money) than might seem to exist when a competitor simply hires away an employee.

Even TalentBurst appears to recognize its failure in alleging improper means in its memorandum when it repeatedly reminds the Court of Federal Rule of Civil Procedure 8(a) and rejects the notion that it needs to " 'present any evidence' that [Collabera's] interference was with improper motive or means." Mem. in Opp. at 7. Instead, TalentBurst reasons that Rule 8(a) means that TalentBurst's generalized allegation that Collabera acted with improper motive or means, Compl. ¶ 31, is sufficient. *See id.* TalentBurst's argument completely ignores *Bell Atlantic's* holding that simply reciting the elements of a cause of action is insufficient to survive a motion to dismiss. *Bell Atlantic v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). TalentBurst has utterly failed to allege anything about what went on between Collabera and Pallerla prior to his resignation.

---

**8.** Alternatively, Collabera may have thought that Pallerla was talented and wished to have a skilled person like him on their payroll. It is hard to see, however, how a desire to employ highly qualified individuals is an im-

proper motive. *See United Truck Leasing,* 406 Mass. at 817, 551 N.E.2d 20 (noting that neither defendant's desire to advance its economic interest nor to advance its customers' interest constituted improper motive).

Accordingly, the motion to dismiss count II of the complaint is GRANTED.

## C. Chapter 93A

■ TalentBurst itself indicates that it bases its chapter 93A claim on Collabera's alleged unfair or deceptive practices in (1) "aiding and abetting" of Pallerla's breach of fiduciary duty and (2) the tortious interference with the relationship between TalentBurst and Pallerla. Mem. in Opp. at 8. As discussed *supra*, however, the first basis is not viable because Pallerla had no fiduciary duty to TalentBurst,[9] and even were the tortious interference claim viable it alone cannot serve as the predicate for a chapter 93A claim.

Massachusetts courts have ruled directly on this question and held that a chapter 93A cannot, as matter of law, derive from a tortious interference claim in these circumstances. Given "the actual willful breach of a non-compete agreement by an employee is not actionable under [chapter] 93A because the claim arose from the employment relationship, then the conduct of a third party to induce such a breach must also not be actionable because this claim, too, arose from the employment relationship." *Intertek Testing Servs. NA, Inc. v. Curtis–Strauss LLC*, 2000 WL 1473126, at *11 (Mass.Super.2000) (Gants, J.). *Intertek* is directly on point and precludes the chapter 93A claim against Collabera.

While not disputing the holding put forth in *Intertek* or that its holding has been adhered to in subsequent cases, TalentBurst cites other cases it argues demonstrate this Court should decline to follow *Intertek*. TalentBurst is wrong. Both of the cases relied upon by TalentBurst differ in significant respects from both the instant case and *Intertek*. First, in *Professional Staffing Group v. Champigny*, 2004 WL 3120093 (Mass.Super.2004) (Sikora, J.), the court addressed a counterclaim brought by an *employee* against her former employer, which alleged that the former employer attempted to interfere with the employee's relationship with her new employer by way of a lawsuit. *Id.* at *1. It literally says nothing about the viability of a chapter 93A claim brought by a former *employer* against a current employer based on the latter's encouragement to an employee to break a noncompetition agreement.[10] Accordingly, it does nothing to undermine *Intertek's* persuasive authority.

*Juncker Associates v. Enes*, 2002 WL 31104013 (Mass.Super.2002) (Lauriat, J.), is similarly irrelevant. In Junker, there was no breach of a noncompetition agreement or similar nonrestrictive covenant. *See id.* at *3 ("[T]he dispute in this action did not arise out of an employment agreement between the plaintiff and the defendant [a former employee]."). Rather, Junker, the plaintiff corporation, sued a former employee who had formed his own business while still employed by Junker and had appropriated sales opportunities for his own business prior to leaving Junker's employ. *See id.* at **1–2. Junker, at

---

9. TalentBurst cites two cases, *Augat Inc. v. Aegis, Inc.*, 409 Mass. 165, 565 N.E.2d 415 (1991) and *Hanover Insurance v. Sutton*, 46 Mass.App.Ct. 153, 705 N.E.2d 279 (1999), that held that a defendant corporation can be held liable under chapter 93A for assisting a employee in breaching his fiduciary duty to his employer. Mem. in Supp. at 8. TalentBurst accurately characterizes the holding of these cases, but they are irrelevant because there was no breach of fiduciary duty in this case.

10. Indeed, counsel for TalentBurst either demonstrates her failure to actually read this case or is affirmatively attempting to mislead the Court when she states that *Professional Staffing* "holds that [chapter] 93A applies to a former employer's suit against its former employee's current employer for violation of a non-compete." Mem. in Supp. at 8.

most, stands only for the general rule that one business may sue another for a chapter 93A violation based upon tortious interference,[11] a rule to which Intertek carves an exception when a noncompete agreement is involved. In sum, because Junker does not even involve the key fact in this case—that the contract interfered with was an employment agreement—or even comment upon Intertek, it does nothing to undermine Intertek's applicability.

Accordingly, because Massachusetts courts have already ruled in the context of a virtually identical fact pattern that a chapter 93A claim cannot as matter of law be sustained and because TalentBurst fails to present any authority to the contrary, the motion to dismiss the chapter 93A claim must be GRANTED.

## III. CONCLUSION

For the foregoing reasons, Collabera's motion to dismiss the complaint ought be, and hereby is, GRANTED. This dismissal is without prejudice to TalentBurst moving within 30 days of the date of this order for leave to amend should such an amendment be tendered in good faith consistent with the strictures of Federal Rule of Civil Procedure 11. Because count III will not lie whether or not a tortious interference claim is viable, that aspect of count III is dismissed with prejudice.

SO ORDERED.

---

11. The *Juncker* court interpreted the claim as one against the former employee's business, although the employee was named personally in the complaint.